MATTHEW Z. CROTTY
Crotty & Son Law Firm, PLLC
905 West Riverside, Suite 404
Spokane, WA 99201-0300
Telephone: 509.850.7011
Facsimile: 509.703.7957

MICHAEL B. LOVE
Michael Love Law, PLLC
905 West Riverside Ave. Ste. 404
Spokane, Washington 99201
Telephone:  509.212.1668

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHRIS NEESE BLACKMAN, | NO. 2:18-cv-00338 |
| Plaintiff, | COMPLAINT AND DEMAND FOR TRIAL BY JURY |
| vs. | |
| OMAK SCHOOL DISTRICT; and, KENNETH ERIK SWANSON, | |
| Defendants. | |

Plaintiff, by and through her attorneys, now alleges:

## I.    PARTIES AND JURISDICTION

1.    Defendant, Omak School District ("District") is a municipal government agency located in the State of Washington.

COMPLAINT  AND DEMAND FOR JURY
TRIAL- 1

2. Defendant, Dr. Kenneth Erik Swanson ("Dr. Swanson") is the Superintendent who wrongfully discharged Plaintiff.

3. Plaintiff, Dr. Chris Neese Blackman ("Dr. Blackman"), resided in Omak, Washington at all times relevant to this lawsuit.

4. All acts complained of occurred within the Eastern District of Washington ("Eastern District").

5. The Federal Court for the Eastern District has personal jurisdiction over the parties and subject matter jurisdiction over the claims in this complaint pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a).

6. Venue is proper in the Eastern District under 28 U.S.C. § 1391(b) because the acts and omissions complained herein occurred in the Eastern District and Defendant conducts business there.

7. On March 14, 2018, Dr. Blackman through her attorneys emailed and mailed a RCW 4.96.020 Notice of Tort Claim to the District. Thereafter Dr. Blackman twice amended her Tort Claim with the last amended tort claim being served on or about July 11, 2018.

## II. INTRADISTRICT ASSIGNMENT

8. This action arose in Okanogan County, Washington. Therefore, Dr. Blackman respectfully requests the case be assigned to the Spokane Division of the Eastern District of Washington.

COMPLAINT  AND DEMAND FOR JURY TRIAL- 2

### III. FACTS

9.    Dr. Blackman re-alleges the above paragraphs as if fully set forth herein.

10.    Dr. Blackman's distinguished professional career has involved her being an adjunct professor, designated mental health professional, social worker, therapist, child development specialist, special education teacher and department chair, assistant principal and principal.

11.    Dr. Blackman has achieved multiple degrees, including Associate Arts, Bachelor of Arts, Masters in Social Work and Education and a Doctorate in Education from Washington State University.

12.    Dr. Blackman's last position with the District was Principal of the Omak Middle School where her last overall performance evaluation had her rated as "proficient."

13.    On April 27, 2016, the District entered into a certificated employee contract with Dr. Blackman as a Middle School Principal.  The District hired Dr. Blackman into this certificated position to commence July 1, 2016.

14.    Dr. Blackman's performance with the District was clearly satisfactory at the time of her wrongful removal/termination without cause from her certificated position as principal.

COMPLAINT  AND DEMAND FOR JURY
TRIAL- 3

15.    Dr. Blackman was well respected by her peers, teachers, staff and students at the Omak Middle School with the exception of a cabal of a few teachers who sought to destroy her professional reputation and have her removed simply because she was holding them accountable to acceptable standards of performance.

16.    Pursuant to pertinent statutes in the State of Washington, Dr. Blackman was entitled to pre-termination notice and an opportunity to be heard, as well as post-termination notice of her right to appeal and have a hearing before an administrative law judge for the purpose of establishing whether her termination was for cause.

17.    Upon information and belief, the District's own policies and procedures required pre-termination notice and an opportunity to be heard before terminating the contract for cause relating to a certificated principal.

18.    Upon information and belief, the District's contract for the 2017-2018 school year with Dr. Blackman was breached by the District when it removed/terminated her from her position as Principal of the Omak Middle School.

19.    On or about October 26, 2017, Dr. Blackman told Dr. Swanson that the District was illegally utilizing its ASB funds.  In response to being informed of the violations (and knowing that an audit was forthcoming) Dr. Swanson said words to the effect of "Oh shit.  That's going to be a mess."

20.    During the early November 2017 timeframe an administrative team meeting took place between Dr. Blackman, Dr. Swanson and other district leaders,

COMPLAINT  AND DEMAND FOR JURY
TRIAL- 4

including Ryan Christoph, David Kirk, Jack Schneider, Sheila Crowder, LeAnne Olson, Scott Haeberle and Michael Porter.

21.     At that meeting Dr. Swanson led a discussion and informed everyone at the meeting that the District had failed to pay certain classified staff overtime wages and that many classified staff were working in excess of forty (40) hours per week without overtime compensation.

22.     Dr. Swanson stated that the District could not afford to pay the classified staff overtime.

23.     Dr. Blackman objected to Dr. Swanson's position and complained to Dr. Swanson insofar as telling Dr. Swanson that the District was violating wage law and that Dr. Blackman would not stand by while the District violated wage law.

24.     Dr. Blackman and other building leaders were also advised by the District and Dr. Swanson that Mr. Haeberle would be keeping the ASB auditors away from the buildings and at the District Office.  Dr. Blackman objected to this scheme.

25.     On November 30, 2017, the District wrongfully removed/terminated Dr. Blackman without cause and in violation of the law.  Prior to her termination and in close proximity Dr. Blackman disclosed to the District and Dr. Swanson that she was experiencing mental health problems (anxiety and depression ) relating to her job as principal and was under a doctor's care.

COMPLAINT  AND DEMAND FOR JURY
TRIAL- 5

26.    Armed with this knowledge of an actual, recorded or perceived disability and her prior exercise of her legal rights and whistleblowing conduct, the District and Dr. Swanson retaliated by removing/terminating Dr. Blackman without cause from her position as the Principal of the Omak Middle School.

27.    Dr. Swanson invaded Dr. Blackman's privacy, cast her in a false light and defamed her by lying to District employees, students, parents and the community at large at a public (staff) meeting that Dr. Blackman had resigned due to medical reasons.

28.    Shortly thereafter the District and Dr. Swanson further violated Dr. Blackman's legal rights and damaged her by disclosing the false allegations set forth above to the Omak Chronicle, Wenatchee World Newspaper and issued several notifications to District employees and the school community that Dr. Blackman had resigned for medical reasons.

29.    At no time did Dr. Blackman voluntarily resign and further at no time did Dr. Blackman authorize the District or Dr. Swanson or both to disclose any health related aspect of Claimant's life to anyone.

30.    On or about April 9, 2018, Dr. Blackman applied for and subsequently interviewed for an elementary principal position for the Pendleton School District.

31.    Upon information and belief, Omak School District staff disclosed prejudicial information about Dr. Blackman regarding her employment with Omak, which, in turn, resulted in Dr. Blackman not getting the job.

32.    Dr. Blackman, ranked #1 of the three candidates, was not selected for the position as a result of Omak's negative portrayal of her employment.

33.    On May 10, 2018, the District, after being informed that Dr. Blackman had retained counsel and would be making claims against the District, sent a letter to Dr. Blackman in which Defendants offered her a lower paying job.

34.    This job offer was a sham as Defendants knew that Dr. Blackman had moved out of the Omak area to Walla Walla, Washington, and was applying for positions with other school districts.

## IV. CLAIMS

### *Cause of Action No. 1 - Wrongful Discharge in Violation of Public Policy*

35.    Dr. Blackman hereby reincorporates and reasserts the above paragraphs as if fully set forth herein.

36.    Employees in Washington are protected from being discharged in violation of a clear mandate of public policy.  The stated public policy is either legislatively or judicially recognized. *Thompson v. St. Regis Paper Company*, 102 Wash.2d 219, 232, 685 P.2d 1081 (1984).

37.    RCW 42.41.030(1) specifically provides that local government employees have "the right to report to the appropriate person or persons' information concerning an alleged improper governmental action."

38.    Additionally, the wage and hour statutes in Washington and the federal Fair Labor Standards Act ("FLSA") protect employees from being retaliated against for opposing the illegal wage practices of employers.

39.    Once a plaintiff shows the violation of a public policy, the burden shifts to the employer to prove the dismissal was for reasons other than those alleged by the employee. *Thompson*, 102 Wash.2d at 233. See also *Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wash.2d 46, 70, 821 P.2d 18 (1991) ("Employer must articulate a legitimate non-pretexual non-retaliatory reason for the discharge.").

40.    Following *Thompson*, the tort of wrongful discharge in violation of public policy has been recognized in four (4) different situations:  (1) where employees are fired for refusing to commit an illegal act; (2) where employees are fired for performing a public duty or obligation, such as serving jury duty; (3) where employees are fired for exercising a legal right or privilege, such as filing workers' compensation claims; and (4) where employees are fired in retaliation for reporting employer misconduct, i.e., whistleblowing.  Under each scenario, Dr. Blackman is required to identify the recognized public policy and demonstrate that the District and Dr. Swanson contravened the policy by terminating her employment.

COMPLAINT  AND DEMAND FOR JURY TRIAL- 8

41.    Washington courts apply a three-step, burden-shifting test taken from *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).[1]  *See, e.g. Scrivener v. Clark Coll.*, 334 P.3d 541 (Wash. 2014) (applying the *McDonnell Douglas* framework in the employment discrimination context).

42.    The first step is for Dr. Blackman to make out a prima facie case for retaliatory discharge.  *See Wilmot v. Kaiser Aluminum & Chem. Corp.*, 821 P.2d 18, 28-29 (Wash. 1991).  To do so, Dr. Blackman need not attempt to prove the District and Dr. Swanson's sole motivation was retaliation.  *Wilmot,* 821 P.2d at 30.  Rather, Dr. Blackman need only produce evidence – even if circumstantial – that her actions, which were in furtherance of public policy, were "a cause of the firing."  *Id.* at 30; *see also, Rickman v. Premera Blue Cross*, 358 P.3d 1153, 1160 (Wash. 2015).

43.    At the second step, the burden of production shifts to the District and Dr. Swanson, who must articulate a legitimate, non-retaliatory reason for the discharge.  *Wilmot,* 821 P.2d at 29.

---

[1] As Dr. Blackman's claim fits within common and previously-recognized wrongful discharge scenarios, the Court need not apply the four-factor "Perritt analysis" to determine whether Dr. Blackman has alleged a violation of public policy that warrants recovery.  *See Gardner v. Loomis Armored Inc.*, 913 P.2d 377, 382 (Wash. 1996) ("Because this situation does not involve the common retaliatory discharge scenario, it demands a more refined analysis than has been conducted in previous cases." (citing Henry H. Perritt, Jr., *Workplace Torts: Rights and Liabilities § 3.7 (1991))).*

44.    The third step requires that Dr. Blackman respond to the District and Dr. Swanson's proffered reason by showing either (1) the employer's articulated reason is pretext, or (2) even if the employer's stated reason is legitimate, retaliation for protected conduct was nevertheless a substantial motivating factor. *Wilmot*, 821 P.2d at 31.

45.    Dr. Blackman will be able to produce *sufficient evidence* to not only survive summary judgment but also prevail in front of a jury of her peers.

46.    By reporting the alleged illegal utilization of ASB funds and objecting to   keeping ASB auditors away from the buildings and at the District Office, and further, objecting to the District and Dr. Swanson failing and refusing to pay certain classified staff overtime wages when they knew that many of the classified staff were working in excess of forty (40) hours in a single particular work week without overtime compensation, Dr. Blackman was engaged in protected activity as a *whistleblower* and also *exercising a legal right or privilege.*

47.    Dr. Blackman's reporting and engagement in protected activity was a *substantial factor* for her discharge without cause.

48.    As a consequence, Dr. Blackman has sustained substantial damages and is entitled to recover both special and general damages.

### *Cause of Action No. 2 – Washington RCW 49.46.100 and FLSA Retaliation*

COMPLAINT  AND DEMAND FOR JURY TRIAL- 10

49.     To state a Fair Labor Standards Act (FLSA) retaliation claim the employee must show that she (1) engaged in statutorily protected conduct (2) the employer must have erroneously believed that the employee engaged in such conduct; (3) the employee must have suffered some adverse employment action; and (4) a causal connection must exist between the employee's conduct and the adverse action.  The elements are similar under RCW 49.46.100 of Washington statutory law protecting employees engaged in protected activity from being retaliated against by her employer.

50.     Oral complaints or opposition to an employer's violations of state federal wage laws constitutes a complaint under Washington wage law and the FLSA.

51.     Dr. Blackman engaged in protected activity by complaining that the District's failure to pay overtime violated the law and Dr. Swanson further opposed the District's violations of the law by telling Dr. Swanson that she would not sit by while the District violated the law.

52.     The District fired Dr. Swanson in retaliation for her oppositional activity and caused Dr. Swanson damages in an amount to be proven at trial.

### Cause of Action No. 3 - Wrongful Discharge Based Upon Breach of Promise

53.    Dr. Blackman hereby reincorporates and reasserts the above paragraphs as if fully set forth herein.

54.    Washington law provides for a wrongful discharge action premised on breach of promise.

55.    In order to prevail on this claim, Dr. Blackman must prove the following elements:  (1) that the statements in the District's policies amounted to promises of specific treatment in specific situations; and (2) that Dr. Blackman justifiably relied upon those *promises*; and (3) that the *promises* of specific treatment were breached.

56.    The District had written policies and procedures that contained enforceable promises that Dr. Blackman as a certificated administrator/employee could only be discharged for cause, and was entitled to pre-termination notice in writing.  Dr. Blackman was also entitled to notice of any appeal rights she may have and notice of the appeal process.

57.    The notice provisions and rights contained in those policies and procedures amounted to promises of specific treatment in specific situations.

58.    The District had written policies and procedures that contained enforceable promises that Dr. Blackman as a certificated administrator/employee could only be discharged for cause, and was entitled to pre-termination notice in

COMPLAINT  AND DEMAND FOR JURY
TRIAL- 12

writing.  Dr. Blackman was also entitled to notice of any appeal rights she may have and notice of the appeal process.

59.    The notice provisions and rights contained in those policies and procedures amounted to promises of specific treatment in specific situations.

60.    Dr. Blackman was aware of these promises prior to her termination and therefore justifiably relied upon those promises.

61.    As a result of the District's failure to follow the enforceable promises set forth in the District's policies and procedures those promises of specific treatment were breached.

62.    As a consequence, Dr. Blackman has suffered special damages which she is entitled to recover.

### Cause of Action No. 4 - Violation Procedural Due Process Section 1983

63.    Dr. Blackman reincorporates and reasserts the above paragraphs as if fully set forth herein.

64.    Dr. Blackman alleges pursuant to 42 U.S.C § 1983, that the District and Dr. Swanson violated her Fourteenth Amendment right to procedural due process by failing to provide her with pre-termination notice and post-termination notice of her right to appeal her termination and to an adversarial hearing before an administrative law judge.

COMPLAINT  AND DEMAND FOR JURY
TRIAL- 13

65.    At some or all times relevant to this action, Dr. Swanson was acting in his official capacity as Superintendent of the District.  At some point, Dr. Swanson was also acting in his personal capacity, in that he personally participated in, expressly or tacitly authorized, or was deliberately indifferent with respect to the conduct described herein.

66.    The District and Dr. Swanson are "persons" within the meaning of 42 U.S.C. § 1983.  All actions taken by the Defendants in relation to Dr. Blackman were taken under the color of law.

67.    All actions taken by the District and Dr. Swanson in relation to Dr. Blackman were also taken pursuant to a governmental policy or custom in that (a) these actions were taken pursuant to a long-standing practice or custom of the District and Dr. Swanson with final policymaking authority, such as these actions constituted an act of official governmental policy; and/or, (b) these actions were ratified by the District or Dr. Swanson or both with final policymaking authority.

68.    Without limitation, the "long-standing practice or custom" of the District included their awareness that Dr. Swanson removed/terminated Dr. Blackman's employment in knowing disregard of her property interest in her job and protections that flow from that interest.  The District was informed, in writing, via (at least) Dr. Blackman's Notice of Tort Claim, that Dr. Swanson's conduct violated Dr. Blackman's Constitutional rights and property right protections.

COMPLAINT  AND DEMAND FOR JURY TRIAL- 14

69.    Upon information and belief, the District and Dr. Swanson with policy making authority ratified Dr. Blackman's unlawful removal/termination without cause even though said official knew that she was a certificated administrator/employee and that her termination did not comport with the District's policies and procedures.

70.    The District further ratified Dr. Swanson's conduct by failing to take steps to remedy the above-referenced misconduct, reinstate Dr. Blackman's employment, and hold Dr. Swanson accountable for his knowing violations of her Constitutional rights.

71.    By their conduct described herein, the District and Dr. Swanson were motivated by evil motive or intent, and acted in a manner which involved a reckless and callous disregard of Dr. Blackman's Constitutional rights under the Fourteenth Amendment.

72.    The Fourteenth Amendment prohibits states from "depriving any person of life, liberty, or property without due process of law." U.S. Const. Amend. XIV. "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259 (1978).

73.    A procedural due process claim has two discrete elements. First, the court "asks whether there exists a liberty or property interest which has been

COMPLAINT  AND DEMAND FOR JURY
TRIAL- 15

interfered with by the State." *Vasquez v. Rackauckas*, 734 F.3d 1025, 1042 (9th Cir. 2013). Second, the court "examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Id.* "The Due Process Clause provides that certain substantive rights – life, liberty, and property – cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).

74. The process is a question of federal, not state law. However, the property right in employment arises from state law. *Id.*

75. There can be no doubt that Dr. Blackman had a property interest in continued employment which is constitutionally protected. RCW 28A.400.300 and 310 specifically provides that certificated employees can only be discharged from employment "for sufficient cause." *Id.; Busey v. Richland School District*, 172 F. Supp. 3d 1167 (2016).

76. As a result, Dr. Blackman was due pre-termination process before she was ultimately terminated. A public employee with a constitutionally protected interest in his or her continued employment is entitled to some form of process prior to being terminated. *Loudermill*, 470 U.S. at 538-39.

77. The District and Dr. Swanson violated Dr. Blackman's due process rights by failing to provide her with pre-termination notice either orally or in writing of the notice of the charges against her, an explanation or disclosure by the District

COMPLAINT AND DEMAND FOR JURY TRIAL- 16

and Dr. Swanson of the alleged evidence against her, and an opportunity "to present her side of the story."  *Id.* at 546.  Dr. Blackman's opportunity to be heard had to have occurred before she was removed/terminated as the Principal of the Omak Middle School.

78.    First, pursuant to RCW 28A.400.300, Dr. Blackman could not have been terminated before she was given notice of probable cause of her termination and provided opportunity for a hearing.  In other words, any termination before this date would not have been given effect.

79.    The District and Dr. Swanson violated Dr. Blackman's procedural due process rights by failing to provide her with pre-termination notice and post-termination notice of her right to appeal her removal/termination and have an adversarial hearing before an administrative law judge.

80.    As a consequence, Dr. Blackman has suffered special and general damages for which she is entitled to recover.

### Cause of Action No. 5 - Violation of First Amendment Rights

81.    Dr. Blackman reincorporates and reasserts the above paragraphs as if fully set forth herein.

82.    The First Amendment protects against government infringement of employees' free exercise of speech, assembly and association.  *Pickering v. Board of Ed.*, 391 U.S. 563 (1968).

COMPLAINT  AND DEMAND FOR JURY TRIAL- 17

83.    The protection of speech for government employees extends to the employee discussing issues of public concern.  *Connick v. Myers*, 461 U.S. 138 (1983).

84.    Under 42 U.S.C. § 1983, a public employee may state a cause of action for discharge or other discipline resulting from the exercise of rights guaranteed under the First Amendment.

85.    A public employee who alleges retaliatory discharge from government employment must show:  (1) the conduct that triggered the discharge was protected under the First Amendment, and (2) the protected conduct was a substantial or motivating factor in the adverse employment decision.  *Smith v. Bates Tech. Coll.,* 139 Wn.2d 793, 812 (2000).

86.    Where the alleged retaliation is based on expressive conduct constituting speech, a court must first determine whether the speech can be characterized as addressing a matter of public concern.

87.    RCW 42.41.030(1) specifically provides that local government employees have "the right to report to the appropriate person or persons' information concerning an alleged improper governmental action."  Dr. Blackman reported to the District and Dr. Swanson on October 26, 2017, that the District was illegally utilizing its ASB funds.

87.   On November 30, 2017, after raising these public concerns, Dr. Blackman was notified of her removal/termination.

88.   As a consequence, Dr. Blackman has suffered special and general damages for which she is entitled to recover.

### Cause of Action No. 6 - Breach of Contract

89.   Dr. Blackman reincorporates and reasserts paragraphs 1 through 81 as if fully set forth herein.

90.   The elements of a breach of contract claim in Washington are:  (1) the existence of a valid contract between the parties, (2) breach by the defendant, and (3) damages.  *See Hearst Communications, Inc. v. Seattle Times Co.*, 154 Wash.2d 493, 115 P.3d 262 (2005).

91.   In a breach of contract case, the injured party has a right to recover all damages that accrue naturally from the breach, including any incidental or consequential losses caused by the breach. *Panorama Village Homeowners Ass'n v. Golden Rule Roofing, Inc.*, 102 Wash. App. 422, 430 (2000).

92.   Dr. Blackman can provide sufficient evidence to meet all of the elements of a breach of contract claim.

93.   Dr. Blackman had a written contract of employment with the District for the 2017-2018 school year.  Washington law required that Dr. Blackman could

COMPLAINT  AND DEMAND FOR JURY
TRIAL- 19

only be terminated for cause.  Dr. Blackman was entitled to pre-termination and post-termination notice.

94.    The District and Dr. Swanson breached Dr. Blackman's contract by terminating her without providing the required notices set forth above. The District and Dr. Swanson also breached the contract by failing to evaluate Dr. Blackman in accordance with her contract; failing to bring criticism and complaints to her  in accordance with her contract and in a timely manner; and failure to provide documentation regarding allegations in her evaluation to her.

95.    As a consequence of the breach, Dr. Blackman is entitled to recover all damages that naturally accrue from the breach.

### Cause of Action No. 7 - Disability Discrimination for both disparate treatment (actual and perceived) and failure to accommodate (an actual or recorded disability) under RCW 49.60 ET. seq.

96.    Dr. Blackman reincorporates and reasserts the above paragraphs as if fully set forth herein.

97.    The Washington Law Against Discrimination ("WLAD") (RCW 49.60) prohibits discrimination against disabled employees whether it be actual, recorded or perceived in the area of termination and failure to accommodate the known disabilities of employees whether it be actual or recorded.

COMPLAINT  AND DEMAND FOR JURY
TRIAL- 20

98.   The WLAD is liberally construed by the courts for the purpose of enforcing the broad remedial schemes which are available to victims of invidious discrimination.

99.   Dr. Blackman is a member of the protected class described herein.

100.   At the time of Dr. Blackman's removal/termination, she was satisfactorily performing her job duties.

101.   Dr. Blackman was in fact subjected to an adverse employment action. On November 30, 2017, the District and Dr. Swanson removed/terminated Dr. Blackman as Principal of the Omak Middle School after she informed the District and Dr. Swanson that she was experiencing mental health problems relating to her job.

102.   After receiving such notice of a disability the District and Dr. Swanson failed to accommodate Dr. Blackman by engaging in the *interactive process* and therefore is in violation of the law.  *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1111 (9th Cir. 2000), *vacated on other grounds*, 535 U.S. 391 (2002).

103.   Dr. Blackman was also protected under the law from *disparate treatment* because conduct resulting from her disability is part of the disability and not a separate basis for termination.  *Gambini v. Total Renal Care, Inc.*, 486 F.3d 1087, 1093 (9th Cir. 2007) (quoting *Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138, 152 (2004); *see also Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128 (9th Cir. 2001)

("The link between the disability and termination is particularly strong where it is the employer's failure to reasonably accommodate a known disability that leads to discharge for performance inadequacies resulting from that disability." *Id.* at 1140.

104.    Dr. Blackman's actual, recorded or perceived disability was a substantial factor for her removal/discharge by the District and Dr. Swanson.

*Cause of Actions Nos. 8, 9, 10, and 11 - District and Dr. Swanson Committed the Intentional Torts of Invasion of Privacy, False Light, Defamation, and Blacklisting.*

105.    Dr. Blackman reincorporates and reasserts paragraphs 1 through 97 as if fully set forth herein.

106.    Washington law recognizes the common law torts of Invasion of Privacy, False Light, Defamation, and Blacklisting.

107.    The District and Dr. Swanson's actions on November 30, 2017, of disclosing Dr. Blackman's actual, recorded or perceived disability to the Omak Community, the Omak Chronicle and the Wenatchee World invaded Dr. Blackman's privacy.  Dr. Blackman will be able to set forth sufficient evidence on each element of this tort claim to survive summary judgment.

108.    Likewise, the District and Dr. Swanson's actions in falsely disclosing to the Omak Community, Omak Chronicle, and Wenatchee World that Dr. Blackman had resigned for medical reasons is false and also casted her in a false

COMPLAINT  AND DEMAND FOR JURY
TRIAL- 22

light.  Dr. Blackman will be able to set forth sufficient evidence on each element of this tort claim to survive summary judgment.

109.    Further, the District and Dr. Swanson's statements amount to libel and slander in that the statements are materially false, and were reported to the Omak Community via a staff meeting and in print; and to the Omak Chronicle and the Wenatchee World in print.

110.  Dr. Blackman will be able to prove defamation per se, as well as defamation under a negligence standard in light of the fact that she is a private and not public figure.

111.    As a result of the District and Dr. Swanson's tortious conduct involving all three tort claims described herein Dr. Blackman is entitled to a substantial award for general damages.

112.    The District also blacklisted Dr. Blackman by telling prospective employers not to hire her.

113.    For example, the Pendleton School District ranked Dr. Blackman first (out of three) candidates for the above-referenced Pendleton School District elementary principal position.

114.    As such, Pendleton planned to offer Dr. Blackman employment but changed its mind after talking to Defendant.

COMPLAINT  AND DEMAND FOR JURY TRIAL- 23

115.   Upon information and belief, Defendants also gave prejudicial information regarding Dr. Blackman to numerous other school districts.   Dr. Blackman applied to the Spokane School District, Pasco School District, and Richland School District, among others.  Dr. Blackman applied for positions that she was uniquely qualified for, e.g., Special Education Administration, Principal and Assistant Principal as well as numerous specialized teaching positions.  It is Dr. Blackman's belief that once learning of her experiences at Omak School District either through the Defendants or by the Defendants libelous actions, these Districts screened out her application.  For example, Dr. Blackman was initially called by the Spokane School District on or around July 30 for a coordinator position.  Spokane withdrew their offer the following day, stating that Dr. Blackman's application did not screen in.  Spokane further commented that it was the situation at Omak School District that caused her application to be screened out.

## V. PRAYER FOR RELIEF

Dr. Blackman respectfully prays for the following relief:

A. Compensation for all injuries and damages suffered including, but not limited to, both economic and non-economic damages, in an amount to be proven at trial including back pay, front pay, pre and post judgment interest, lost benefits of employment, adverse tax consequences of any award for economic damages pursuant to the WLAD, exemplary damages, punitive damages, and general

COMPLAINT  AND DEMAND FOR JURY
TRIAL- 24

damages relating to emotional distress and mental anguish damages as provided by law.

B. Dr. Blackman's reasonable attorneys' fees and a multiplier to those fees, expert fees, and costs, pursuant to 42 U.S.C. § 1988, and as otherwise provided under law under RCW 49.48.030 and 49.60.030(2), as well as the *private attorney general* theory of recovery of reasonable attorney fees and costs in employment related cases.

C. For such other and further relief as this Court deems just and equitable.

Respectfully submitted this 29th day of October 2018.

*/s Matthew Crotty*
MATTHEW Z. CROTTY
Crotty & Son Law Firm, PLLC
905 West Riverside, Suite 404
Spokane, WA 99201
Telephone: 509.850.7011

*/s Michael Love*
MICHAEL B. LOVE
MICHAEL LOVE LAW, PLLC
905 West Riverside Ave. Ste. 404
Spokane, Washington 99201
Telephone:  509.212.1668

Attorneys for Plaintiff

COMPLAINT  AND DEMAND FOR JURY
TRIAL- 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

COMPLAINT  AND DEMAND FOR JURY
TRIAL-  26