UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHRIS NEESE BLACKMAN,<br><br>     Plaintiff,<br><br> v.<br><br>OMAK SCHOOL DISTRICT, and<br>KENNETH ERIK SWANSON,<br><br>     Defendants. | NO. 2:18-CV-0338-TOR<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT SWANSON'S MOTION TO DISMISS |

 BEFORE THE COURT is Defendant Erik Swanson's Motion to Dismiss Under Rule 12(b)(6) (ECF No. 12). This matter was submitted without oral argument. The Court has reviewed the record and files herein, and is fully informed. For the reasons discussed below, Defendant's Motion to Dismiss (ECF No. 12) is **GRANTED in part and DENIED in part**.

## BACKGROUND

 On October 29, 2018, Plaintiff Chris Neese Blackman filed this Complaint against Defendants Omak School District ("District") and Dr. Kenneth Erik

Swanson ("Defendant Swanson").  ECF No. 1.  Plaintiff alleges she was wrongfully terminated in violation of state and federal law.  *Id*. at ¶ 25.  As compensation for her injuries, Plaintiff seeks economic and non-economic damages, as well as exemplary damages, punitive damages and general damages relating to emotional distress and mental anguish.  *Id*. at 24.

In the instant motion, Defendant Swanson moves to dismiss several of Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6).  ECF No. 12.  Plaintiff filed a response to Defendant Swanson's motion to dismiss.  ECF No. 13.

## FACTS

The following facts are drawn from Plaintiff's Complaint and are accepted as true for purposes of the instant motion only.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  On April 27, 2016, Plaintiff entered into a certificated employee contract with the District.  ECF No. 1 at 3, ¶ 13.  The District hired Plaintiff for the position of Principal of Omak Middle School, commencing July 1, 2016.  *Id*.  This action revolves around events that occurred during the 2017-2018 school year, which ultimately resulted in Plaintiff being terminated from her position as Principal of Omak Middle School on November 30, 2017.  *Id*. at ¶ 25.

On or about October 26, 2017, Plaintiff informed Defendant Swanson that the District was illegally utilizing its ASB funds.  *Id*. at ¶ 19.  Upon hearing this information, Defendant Swanson allegedly responded, "Oh shit. That's going to be

a mess." *Id.* Then, in early November 2017, an administrative team meeting was held with Plaintiff, Defendant Swanson, and several other district leaders. *Id.* at ¶ 20. At the meeting, Plaintiff led a discussion and informed everyone at the meeting that the District had failed to pay certain classified staff overtime wages and that many classified staff were working in excess of forty hours per week without overtime compensation. *Id.* at ¶ 21. Defendant Swanson allegedly responded that the District could not afford to pay the classified staff overtime. *Id.* at ¶ 22. Plaintiff objected to Defendant Swanson's position, again reiterated that the District was violating the wage law, and told Defendant Swanson that she could not stand by while the District did so. *Id.* at ¶ 23. Additionally, Plaintiff and other building leaders were advised by the District and Defendant Swanson of their intent to keep ASB auditors away from the building and the District Office. *Id.* at ¶ 24. Plaintiff also objected to this scheme. *Id.*

On November 30, 2017, the District and Defendant Swanson terminated Plaintiff allegedly without cause from her position as Principal of Omak Middle School. *Id.* at ¶¶ 25-26. Plaintiff asserts that her performance at the time of her termination was satisfactory, and she was well respected by her peers, teachers, staff and the students at Omak Middle School. *Id.* at ¶¶ 14-15. However, prior to her termination, Plaintiff disclosed to the District and Defendant Swanson that she was experiencing mental health problems relating to her job as principal and was

under a doctor's care. *Id*. at ¶ 25. According to Plaintiff, armed with knowledge of her disability and whistleblowing conduct, the District and Defendant Swanson proceeded to terminate her from her position as Principal of Omak Middle School. *Id*. at ¶ 26.

Following Plaintiff's termination, Defendant Swanson announced to District employees, students, parents and the community "at a public (staff) meeting" that Plaintiff had resigned due to medical reasons. *Id*. at ¶ 27. Shortly thereafter, the District and Defendant Swanson informed the Omak Chronicle and the Wenatchee World Newspaper about Plaintiff's alleged resignation. *Id*. at ¶ 28. The Defendants also issued additional notifications to District employees and the school community that Plaintiff had resigned for medical reasons. *Id*. Plaintiff maintains that she did not voluntarily resign, nor did she authorize the District or Defendant Swanson to disclose health related information about Plaintiff to anyone. *Id*. at ¶ 29.

On or about April 9, 2018, Plaintiff applied and interviewed for an elementary school principal position with the Pendleton School District. *Id*. at ¶ 30. Plaintiff alleges that Omak School District staff disclosed prejudicial information about Plaintiff regarding her employment with the District, which resulted in Plaintiff not getting the job. *Id*. at ¶ 31. Plaintiff claims she was ranked

first out of the three candidates but was not selected for the position as a result of the District's negative portrayal of her employment. *Id*. at ¶ 32.

On March 10, 2018, the District sent a letter to Plaintiff in which it offered Plaintiff a lower paying job. *Id*. at ¶ 33. Plaintiff maintains that the job offer was a sham, as Defendants knew Plaintiff had moved out of the Omak area and made the offer only after learning that Plaintiff had retained counsel and would be making claims against the District. *Id*. at ¶¶ 33-34.

## DISCUSSION

### I.    Motion to Dismiss

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain only "a short and plain statement of relief showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss the complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When evaluating a complaint under Rule 12(b)(6), courts must "accept the allegations in the complaint as true, and draw all reasonable factual inferences in favor of the plaintiff." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). And, notwithstanding Rule 8(a)(2), the Supreme Court has specified that pleadings which merely offer "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancements" are not

sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007)). Thus, while "detailed factual allegations" are not required, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. (quoting *Twombly*, 550 U.S. at 570).

In her Complaint, Plaintiff asserts the following eleven claims against the District and Defendant Swanson: (1) Wrongful Discharge in Violation of Public Policy; (2) Washington RCW 49.46.100 and FLSA Retaliation; (3) Wrongful Discharge Based Upon Breach of Promise; (4) Violation Procedural Due Process Section 1983; (5) Violation of First Amendment Rights; (6) Breach of Contract; (7) Disability Discrimination under RCW 49.60 *et seq*.; and the intentional torts of (8) Invasion of Privacy, (9) False Light, (10) Defamation, and (11) Blacklisting. ECF No. 1 at 7-24.

In the pending motion to dismiss, Defendant Swanson moves the Court to dismiss all of Plaintiff's claims apart from her procedural due process claim. ECF No. 12 at 1. In her response to Defendant Swanson's motion, Plaintiff concedes that five of the eleven claims—Cause of Action No. 6 (Breach of Contract) and Cause of Action Nos. 8-11 (Intentional Torts of Invasion of Privacy, False Light, Defamation, and Blacklisting)—are not lodged against Defendant Swanson. ECF No. 13 at 17 ("As a point of clarification, Ms. Blackman is only asserting her

breach of contract, false light, defamation, blacklisting, and invasion of privacy claims against Omak School District.  She is not asserting those claims against Defendant Swanson.").  Accordingly, only five of the eleven claims asserted in Plaintiff's Complaint are currently at issue in this motion.  The Court discusses each claim in turn below.

## 1.  Wrongful Discharge in Violation of Public Policy

First, regarding Plaintiff's wrongful discharge in violation of public policy claim, Defendant Swanson moves the Court to dismiss this claim because the tort can only be asserted against an employer, not an employee of the employer like Defendant Swanson.  ECF No. 12 at 3.  In response, Plaintiff observes that Defendant Swanson fails to cite a single Washington case or statute to support this argument, instead relying exclusively on federal case law.  ECF No. 13 at 4. Plaintiff asserts that her wrongful discharge claim is based on Washington tort law, which permits individual liability when an employee claims to have been discharged in violation of established public policy.

Wrongful discharge in violation of public policy is an intentional tort and an exception to the general principle that absent a definite contract, employees are terminable at-will.  *Havens v. C&D Plastics, Inc.*, 124 Wash.2d 158, 177 (1994). To establish a claim of wrongful discharge on public policy grounds, the complaining employee must satisfy four elements: "(1) the existence of a 'clear

public policy' (clarity element), (2) whether 'discouraging the conduct in which [the employee] engaged would jeopardize the public policy' (jeopardy element), (3) whether the 'public-policy-linked conduct caused the dismissal' (causation element), and (4) whether the employer is 'able to offer an overriding justification for the dismissal' (absence of justification element)." *Rose v. Anderson Hay and Grain Co.*, 184 Wash.2d 268, 277 (2015) (quoting *Gardner v. Loomis Armored, Inc.*, 128 Wash.2d 931, 941 (1996)). The Washington Supreme Court has recognized four scenarios that will potentially expose an employer to liability: "(1) when employees are fired for refusing to commit an illegal act, (2) when employees are fired for performing a public duty or obligation, such as serving jury duty, (3) when employees are fired for exercising a legal right or privilege, such as filing workers' compensation claims, and (4) when employees are fired in retaliation for reporting employer misconduct, i.e., whistle blowing." *Id*. at 287.

In her Complaint, Plaintiff asserts that she was fired in retaliation for engaging in protected activity as a whistleblower—i.e., reporting the misuse of ASB funds, objecting to keeping ASB auditors away from school buildings and the District Office, and objecting to the District and Defendant Swanson's refusal to pay certain classified staff overtime wages. ECF No. 1 at ¶ 46. There is no dispute between the parties that these facts fall directly within the realm of wrongful discharge in violation of public policy under the fourth scenario described above.

The only disputed issue is whether Washington law permits Plaintiff to pursue this wrongful discharge claim against individual supervisors, such as Defendant Swanson, the Superintendent of the Omak School District.

The parties have not identified a single case where the Washington Supreme Court squarely addressed whether a claim for wrongful discharge against public policy can be brought against an individual supervisor. Based on the Court's review of relevant Washington precedent, it appears that the Washington Supreme Court has not yet resolved whether supervisors can be held personally liable for this tort. The Court can, however, predict how the Washington Supreme Court would rule if presented with the issue. In Washington, the wrongful discharge against public policy tort was first recognized to prevent employers from utilizing the employee at-will doctrine to subvert public policy. *Thompson v. St. Regis Paper Co.*, 102 Wash.2d 219, 231 (1984). In adopting the doctrine, the Washington Supreme Court declared that it was recognizing "a cause of action in tort for wrongful discharge if the discharge of the employee contravenes a clear mandate of public policy." *Id*. at 232. Thus, the primary purpose underlying the tort is to prevent the frustration of "a clear manifestation of public policy." *Id*. at 231. The Washington Supreme Court has also reiterated that the doctrine is "a means of encouraging both employers and employees to follow the law." *Rose*, 184 Wash.2d at 275.

The Court concludes that the purpose of the wrongful discharge tort—namely, the deterrence of discharge in violation of public policy—is best served if individual employees, particularly those in a position of power, are held personally liable for conduct that violates public policy and effectuates another employee's termination. In a wrongful discharge case, the tortious act is not the discharge itself; rather, the discharge becomes tortious by virtue of the wrongful reasons behind it. As such, where those tortious reasons arise from the unlawful actions of the individual effecting the discharge, he or she should share in liability.

Thus, for purposes of the pending motion, the Court assumes that, were the Washington Supreme Court to directly address this issue, it would find that wrongful discharge against public policy claims by an employee are cognizable against the employer and against individual supervisors or managers who participated in the wrongful firing of the employee.[1] Accordingly, at this time the Court denies Defendant Swanson's Motion to Dismiss insofar as it relates to Plaintiff's wrongful discharge in violation of public policy claim.

//

//

---

[1] This ruling does not preclude the Court from later certifying this issue to the Washington Supreme Court, if that becomes necessary.

## 2. Retaliation under RCW 49.46.100 and the FLSA

Next, Defendant Swanson argues that Plaintiff fails to state a claim for retaliation under either Washington's Minimum Wage Act ("MWA") or the Fair Labor Standards Act ("FLSA"). Regarding Plaintiff's state law retaliation claim, Defendant Swanson asserts that Plaintiff's Complaint does not contain sufficient facts to support individual liability because Plaintiff has only "alleged that the District – not Dr. Swanson – fired her." ECF No. 12 at 4. As for Plaintiff's FLSA retaliation claim, Defendant argues that Plaintiff Complaint does not "set forth facts to permit the Court to infer that Dr. Swanson exercised control over the nature and structure of the employment relationship or economic control over the relationship." ECF No. 12 at 6. The Court finds neither argument convincing.

Beginning with Plaintiff's state law claim, the MWA's anti-retaliation provision, RCW 49.46.100(2), provides that "[a]ny employer who discharges or in any other manner discriminates against any employee because such employee has made any complaint to his or her employer . . . that the employer has violated any provision of this chapter . . . shall be deemed in violation of this chapter . . . ." The MWA defines "employer" as "any individual, partnership, association, corporation, business trust, or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee." RCW 49.46.010(4). Based on this statutory language, the MWA provides personal

liability for individuals acting in the interest of an employer for retaliation under RCW 49.46.100.

Here, Defendant Swanson does not contest whether individual liability exists under RCW 49.46.100, contrary to Plaintiff's contentions. *See* ECF No. 13 at 5 (Plaintiff arguing that "Defendant cites no authority for its proposition Mr. Swanson cannot be held individually liable under Ms. Blackman's RCW 49.46.100 retaliation claim."). Instead, Defendant urges the Court to dismiss Plaintiff's state law retaliation claim because the Complaint fails to state sufficient facts relating to Defendant Swanson's alleged conduct in retaliating against Plaintiff. The Court declines to do so. In her Complaint, Plaintiff alleges that she complained to Defendant Swanson that the District was violating overtime laws, Plaintiff informed Defendant Swanson that she would not sit by while the District violated the law, and the District and Defendant Swanson fired Plaintiff in retaliation for her oppositional activity. ECF No. 1 at ¶¶ 26, 51-52. Given the liberal pleading standards, Plaintiff's allegations raise the inference that Plaintiff was discharged for complaining to Defendant Swanson that the District was violating the MWA's overtime provisions. Defendant Swanson has thus failed to demonstrate that dismissal of this claim is proper.

Turning to Plaintiff's FLSA retaliation claim, § 215(a)(3) of the FLSA makes it unlawful "for any person . . . to discharge or in any other manner

discriminate against any employee because such employee has filed a complaint . . . under or related to this chapter." 29 U.S.C. § 215(a)(3). The FLSA defines the term "person" to include "an individual." 29 U.S.C. § 203(a). Section 216(b) in turn creates a private right of action against any "employer" who violates section 215(a)(3); and the FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. §§ 216(b), 203(d).

Defendant Swanson primarily argues that "Plaintiff's complaint did not set forth facts to permit the Court to infer that Dr. Swanson exercised control over the nature and structure of the employment relationship or economic control over the relationship," as required to establish individual liability for retaliation under the FLSA. ECF No. 12 at 6. However, as Plaintiff notes, the Ninth Circuit recently rejected the "economic control" test as means to determine who may be held liable for retaliation. ECF No. 13 at 6-7. In *Arias*, the Ninth Circuit declined to use the "economic control" or "economic realities" tests to determine liability for retaliation under the FLSA. *Arias v. Raimondo*, 860 F.3d 1185, 1189-90 (9th Cir. 2017). Instead, relying on the plain language of the anti-retaliation provision, which prohibits "any person"—not just an actual employer—from engaging in retaliatory conduct, the *Arias* court held that Congress meant "to extend section 215(a)(3)'s reach beyond actual employers." *Id*. at 1191-92. In light of *Arias*,

Defendant Swanson's arguments supporting dismissal are futile.  Like her state law retaliation claim, Plaintiff's FLSA retaliation cause of action survives Defendant Swanson's motion to dismiss.

### 3.  Wrongful Discharge Based Upon Breach of Promise

Next, Defendant argues that "[a] claim for breach of promise of specific treatment in specific situations (STSS) can only be brought against an employer – not against another employee of the employer."  ECF No. 12 at 7-8.  Plaintiff asserts that in *Brown v. Scott Paper Worldwide, Co.*, 143 Wash.2d 349, 363 (2001), the Washington Supreme Court recognized individual liability on a breach of promise claim if accompanied by a claim under the Washington Law Against Discrimination ("WLAD"), RCW 49.60 *et seq*.  ECF No. 13 at 7.  As such, Plaintiff maintains that her breach of promise claim against Defendant Swanson is proper.

Under Washington law, promises of specific treatment in specific situations contained in an employee manual or handbook issued by an employer to its employees may, in appropriate situations, obligate the employer to act in accordance with those promises.  If an employer creates an atmosphere of job security and fair treatment with promises of specific treatment in specific situations and an employee is induced thereby to remain on the job and not actively seek other employment, those promises are enforceable components of the employment

relationship. *Thompson*, 102 Wash.2d at 230. A specific treatment claim is not a species of express or implied contract, but instead is based on a justifiable reliance theory. *DePhillips v. Zolt Const. Co., Inc.*, 136 Wash.2d 26, 34 (1998). To prevail on a claim for specific treatment in specific situations, a plaintiff must prove: (1) a promise of specific treatment in a specific situation; (2) justifiable reliance on the promise by the employee; and (3) a breach of the promise by the employer. *Bulman v. Safeway, Inc.*, 144 Wash.2d 335, 344 (2001).

In her Complaint, Plaintiff asserts that "[t]he District had written policies and procedures that contained enforceable promises that Dr. Blackman as a certificated administrator/employee could only be discharged for cause, and was entitled to pre-termination notice in writing," and that Plaintiff was also entitled to notice of her appeal rights and the appeal process. ECF No. 1 at ¶¶ 56, 58. Plaintiff argues that the notice provisions and rights contained in the District's written policies and procedures amount to promises of specific treatment in specific situations and, "[a]s a result of the District's failure to follow the enforceable promises set forth in the District's policies and procedures those promises of specific treatment were breached." *Id*. at ¶ 57. Defendant Swanson argues that he cannot be held individually liable for this claim as "[a]ny promises made in the policies and procedures were made by the District and not by Dr. Swanson." ECF No. 12 at 8.

While Plaintiff's claim may stand against the District, the Court agrees with Defendant Swanson that this claim should be dismissed insofar as it relates to him in his individual capacity. Significantly, Plaintiff has not established that a cause of action for breach of promise of specific treatment in specific situations permits individual liability. Plaintiff exclusively relies on *Brown* to support her individual liability argument, but the *Brown* decision has no bearing on her argument; while *Brown* recognized individual liability for acts of employment discrimination under the WLAD, the *Brown* decision did not involve or address the issue of individual liability for a claim of promises of specific treatment in specific situations. 143 Wash.2d at 359-60. Moreover, Plaintiff does not allege that any of the specific promises at issue here—i.e., that certificated employees could only be discharged for cause and were entitled to pre-termination notice in writing—were made by Defendant Swanson. Rather, all of the alleged promises were made by the District alone. Because the tort is based on justifiable reliance, it follows that the only employer who makes the allegedly enforceable promises should remain on the hook for purposes of liability. Accordingly, the Court grants Defendant Swanson's Motion to Dismiss insofar as it relates to Plaintiff's wrongful discharge based upon breach of promise claim.

//

//

### 4. First Amendment Retaliation Claim

Defendant Swanson argues that Plaintiff fails to state a claim for First Amendment retaliation because her "allegations are insufficient to plausibly show that she acted as a private citizen rather than a public employee." ECF No. 12 at 9. Defendant asserts that Plaintiff's report to Defendant Swanson that ASB funds were being misused and that the District was violating wage laws was fulfilling her professional duties. *Id*. at 11. In response, Plaintiff argues that her speech regarding the illegal use of ASB funds was of public interest and outside her job duties as Principal of Omak Middle School because "[i]llegal use of ASB funds, attempts to cover up the illegal use of ASB funds, and non-payment of overtime compensation" are matters of inherent public concern. ECF No. 13 at 8-12.

"[A] governmental employer may impose certain restraints on the speech of its employees, restraints that would be unconstitutional if applied to the general public." *City of San Diego v. Roe*, 543 U.S. 77, 80 (2004). To determine whether a public employee has alleged a violation of her First Amendment rights as a result of government retaliation for her speech, the Court considers whether (1) the plaintiff spoke on a matter of public concern; (2) the plaintiff spoke as a private citizen or public employee; (3) the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) the state had an adequate justification for treating the employee differently from other members of the

general public; and (5) the state would have taken the adverse employment action even absent the protected speech. *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1103 (9th Cir. 2011). The plaintiff bears the burden of proof on the first three areas of inquiry, but the burden shifts to the government to prove the last two. *Id*.

Here, Defendant Swanson asserts that "Plaintiff's allegations are insufficient to plausibly show that she acted as a private citizen rather than a public employee." ECF No. 12 at 9. In Defendant's view, "Plaintiff's report to Dr. Swanson that ASB funds were being misused and that the District was violating wage laws was fulfilling her professional duties"; therefore, Plaintiff was conclusively speaking as a public employee, not a private citizen. *Id*. at 11. The Court disagrees.

The Ninth Circuit has consistently recognized the misuse of public funds, wastefulness, and inefficiency in managing and operating government entities as matters of public concern for purposes of First Amendment retaliation. *Keyser v. Sacramento City Unified School Dist.*, 265 F.3d 741, 747 (9th Cir. 2001) (quoting *Roth v. Veteran's Admin.*, 856 F.2d 1401, 1405 (9th Cir. 1988)). In her Complaint, Plaintiff specifically alleged that she leveled charges of misuse of ASB funds against the District and, after raising these public concerns, Plaintiff was subsequently notified of her termination. ECF No. 1 at ¶¶ 87-88. Given the liberal pleading standards, the Court finds that Plaintiff's allegations raise the inference

that her speech was constitutionally protected and a motivating factor behind her termination.

Alternatively, Defendant Swanson argues that he is entitled to qualified immunity on Plaintiff's First Amendment retaliation claim because "[t]here is no pre-existing law that would put Dr. Swanson on notice that Plaintiff's complaints about misuse of ASB funds or failing to pay overtime would somehow trigger a First Amendment violation." ECF No. 12 at 13. According to Defendant Swanson, "[t]he claimed violations were not so clearly established that every reasonable superintendent would know that Plaintiff's First Amendment rights were being violated." *Id.* However, in 2017, "both the constitutional protection of employee speech and a First Amendment cause of action for retaliation against protected speech were clearly established." *Coszalter v. City of Salem*, 320 F.3d 968, 989 (9th Cir. 2003). Moreover, as early as 2001, the Ninth Circuit held that employee speech made to a non-public audience regarding misuse of funds was protected by the First Amendment. *Keyser v. Sacramento City Unified School District*, 265 F.3d 741, 745, 747-48 (9th Cir. 2001). Thus, at the time of the alleged First Amendment violations in this case, relevant legal precedents were sufficiently specific to put Defendant Swanson on notice that his actions were potentially unconstitutional. Defendant Swanson is therefore not entitled to qualified immunity.

1    Accordingly, the Court denies Defendant Swanson's Motion to Dismiss

2  insofar as it relates to Plaintiff's First Amendment retaliation claim.

3        **5.  Disability Discrimination under RCW 49.60**

4        Finally, Defendant Swanson argues that Plaintiff's Complaint "does not set

5  forth facts that plausibly allow the Court to draw a reasonable inference that Dr.

6  Swanson is liable for disability discrimination or retaliation" under the WLAD.

7  ECF No. 12 at 15.  Specifically, Defendant Swanson argues that "Plaintiff did not

8  allege facts describing the extent of her anxiety and depression, how her 'mental

9  health problems' substantially limited her ability to perform her job or that she

10 requested any type of accommodation."  *Id*. at 14.

11       The WLAD prohibits an employer from discharging any employee "because

12 of . . . the presence of any sensory, mental, or physical disability."  RCW

13 49.60.180(2).  Under RCW 49.60.180, a disabled employee has a cause of action

14 for at least two different types of discrimination.  The employee may allege failure

15 to accommodate where the employer failed to take steps "reasonably necessary to

16 accommodate the employee's condition."  *Jane Doe v. Boeing*, 121 Wash.2d 8, 17

17 (1993).  The employee may also file a disparate treatment claim if the employer

18 discriminated against the employee because of the employee's condition.  *Riehl v.*

19 *Foodmaker, Inc.*, 152 Wash.2d 138, 145 (2004).  To establish a prima facie case of

20 failure to reasonably accommodate a disability, a plaintiff must show that (1) she

had a sensory, mental, or physical abnormality that substantially limited her ability to perform the job; (2) she was qualified to perform the job; (3) she gave the employer notice of the abnormality and its substantial limitations; and (4) upon notice, the employer failed to affirmatively adopt measures available to it and medically necessary to accommodate the abnormality. *Id*. In a disparate treatment discrimination case, the employee bears the burden of establishing that she (1) is a protected class (disabled), (2) was discharged, and (3) was doing satisfactory work. *Mikkelsen v. Public Utility District No. 1 of Kittitas County*, 189 Wash.2d 516, 527-28 (2017).

In her Complaint, Plaintiff alleges that she is a member of a protected class based on her disability, she was terminated by the District and Defendant Swanson after they learned of her mental health problems, and she was satisfactorily performing her job duties at the time of her termination. ECF No. 1 at ¶¶ 99-101. The Court finds that Plaintiff has sufficiently pleaded a cause of action for disparate treatment under the WLAD.

Plaintiff also maintains that, after receiving notice of her disability, "the District and Dr. Swanson failed to accommodate Dr. Blackman by engaging in the *interactive process* and therefore is in violation of the law." *Id*. at ¶ 102 (emphasis in original). Unlike her disparate treatment claim, the Court finds that Plaintiff's failure to accommodate allegations are of the type wholly inadequate under

*Twombly* and *Iqbal*. Other than conclusory statements contained in a single paragraph of her Complaint, none of the elements of this cause of action have been properly pleaded with short, plain statements of fact.

Federal Rule of Civil Procedure 15(a), leave to amend a party's pleading "should [be] freely give[n] . . . when justice so requires," because the purpose of the rule is "to facilitate decision on the merits, rather than on the pleadings or technicalities." *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015) (citation omitted). Here, the Court grants Plaintiff leave to amend her pleadings to clarify her failure to accommodate claim.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendants' Motion to Dismiss (ECF No. 11) is **GRANTED in part and DENIED in part**.

2. Plaintiff is granted leave to amend her Complaint regarding her failure to accommodate claim. Plaintiff shall file an Amended Complaint **within 14 days** of this Order.

The District Court Executive is directed to enter this Order and furnish copies to counsel.

**DATED** June 6, 2019.



THOMAS O. RICE
Chief United States District Judge