1

2

3

4

5                        UNITED STATES DISTRICT COURT

6                        EASTERN DISTRICT OF WASHINGTON

7    CHRIS NEESE BLACKMAN,

8                          Plaintiff,        NO. 2:18-CV-0338-TOR

9         v.                                 ORDER GRANTING IN PART
                                             DEFENDANTS' MOTION FOR
                                             SUMMARY JUDGMENT
10   OMAK SCHOOL DISTRICT and
     KENNETH ERIK SWANSON,

11
                           Defendants.
12

13        BEFORE THE COURT is Defendants' Motion for Summary Judgment

14   (ECF No. 28).  This matter was heard with telephonic oral argument on June 9,

15   2020.  Matthew Z. Crotty appeared on behalf of Plaintiff.  Jerry J. Moberg and

16   James E. Baker appeared on behalf of Defendants.  The Court has reviewed the

17   record and files herein and considered the parties' oral arguments, and is fully

18   informed.  For the reasons discussed below, Defendants' Motion for Summary

19   Judgment (ECF No. 28) is granted in part.

20   //

     ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY
     JUDGMENT ~ 1

**BACKGROUND**

This case concerns Plaintiff's employment as principal of Omak Middle School ("OMS"). The following facts are not in dispute, except where noted. For purposes of summary judgment, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed." Fed. R. Civ. P. 56(e)(2).

   *1.  The Parties*

Defendant Omak School District ("the District") serves approximately 1,600 students and an additional 3,400 online students through Washington Virtual Academy. ECF No. 29 at 3, ¶ 3. The District is governed by a five-member Board of Directors. *Id.* Defendant Dr. Swanson is the Superintendent of the District. ECF No. 29 at 2, ¶ 1.

Plaintiff Dr. Blackman is a certificated employee in education who has worked in Washington since August 2004. ECF No. 31 at 2, ¶ 3. Dr. Blackman has obtained both teacher and principal certification in Washington. *Id.* at ¶ 2. In April 2016, Dr. Blackman was hired to serve as principal of OMS, with the position to begin on July 1, 2016. ECF No. 29 at 3, ¶ 5. At the end of the 2016-2017 school year, Dr. Swanson evaluated Dr. Blackman's overall performance as

Proficient.  ECF No. 29 at 4, ¶ 7.  Dr. Blackman's contract was renewed for the 2017-2018 school year.  *Id.*

### 2.   *OMS Workplace Culture*

The parties dispute the specific details of events, but it is generally undisputed that workplace culture issues caused significant conflict during Dr. Blackman's tenure as principal of OMS.

Plaintiff asserts that "issues between leadership and staff" at OMS predated Dr. Blackman's arrival.  ECF No. 31 at 6, ¶ 29.  After Dr. Blackman began serving as OMS principal, Kathy Curtiss, a consultant with the state Office of Superintendent for Public Instruction ("OSPI"), advised Dr. Swanson and Mr. Porter that problems at OMS were being led by two teachers, Mr. and Mrs. Rose. ECF No. 31 at 7, ¶ 35.  Dr. Blackman was generally well respected by her peers, teachers, staff, students, and parents, with the exception of a group of teachers led by the Roses who resisted Dr. Blackman's efforts to hold teachers accountable to acceptable standards of performance.  ECF No. 31 at 9, ¶ 43.  Dr. Blackman complained to Dr. Swanson, Mr. Porter, and Leanne Olsen, the Director of Human Resources, that a few teachers, particularly the Roses, were creating a hostile work environment that was negatively impacting Dr. Blackman's health.  ECF No. 31 at 10, ¶ 49.  Despite these ongoing issues, Dr. Swanson rated Dr. Blackman's performance at the end of the 2016-2017 school year as "proficient," which is the

second highest rating among four possible, and Dr. Swanson never told Dr. Blackman that he perceived any problems with her leadership or student or staff safety.  ECF No. 31 at 8, ¶¶ 39-40.  Defendants dispute this characterization of events.

Defendants assert Dr. Swanson told Dr. Blackman on several occasions at the end of the 2016-2017 school year that he perceived problems with Dr. Blackman's leadership.  ECF No. 29 at 4, ¶ 8.  Dr. Swanson received multiple complaints from staff members and parents about feeling "unsafe" at OMS due to division within and among the staff.  *Id.* at ¶ 9.  Dr. Swanson counseled Dr. Blackman to reduce the number of initiatives she was undertaking, as Dr. Swanson perceived poor communication with too much change at once to be a driver of conflict at OMS, but Dr. Blackman did not do so.  ECF No. 29 at 5, ¶ 10.

### 3.  *Dr. Blackman's Mental Distress*

In January 2017, Dr. Blackman established care with a healthcare provider and discussed the stress she was experiencing at work.  ECF No. 31 at 10, ¶¶ 51-52.  Dr. Blackman was diagnosed with depression and anxiety and was prescribed Fluoxetine (Prozac) to treat mental health issues related to workplace stress.  *Id.* at ¶¶ 52-53.  By October 2017, Dr. Blackman's healthcare provider increased her medication.  ECF No. 31 at 12, ¶ 61.

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 4

4. *ASB Funding Issue*

The parties do not dispute that on October 26, 2017, Dr. Blackman told Dr. Swanson that Dr. Blackman had concerns over the Associated Student Body ("ASB") expenditure approval process and that the District was illegally using ASB funds.  ECF No. 29 at 7, ¶¶ 14-15.  Dr. Swanson responded along the lines of "Oh shit, that's going to be a mess."  *Id.* at ¶ 15.

The parties dispute how Dr. Swanson acted following Dr. Blackman's report.  Dr. Blackman alleges Dr. Swanson decided to keep ASB auditors away from the school to prevent staff from being interviewed at the middle and high schools, and that Dr. Blackman objected to this practice.  ECF No. 31 at ¶ 71. Defendants allege Dr. Swanson welcomed Dr. Blackman's report, that Dr. Swanson referred the matter for further review, and that Dr. Swanson specifically requested the state auditor examine the ASB process during an annual audit.  ECF No. 29 at 7, ¶¶ 14-15.

The parties do not dispute that the state auditor's report recommended "the District improve internal controls over ASB activities to comply with state laws, regulations and District policy to safeguard public resources."  ECF No. 29 at 8, ¶ 17.  A newspaper article later reported the deficiencies relating to the District's ASB funds.  ECF No. 31 at 15, ¶ 73.

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 5

5. *Overtime Pay Issue*

The parties do not dispute that in early November 2017, an "administrative team meeting" took place between Dr. Blackman, Dr. Swanson, and other District administrators who were outside of Dr. Blackman's chain of command. ECF No. 31 at 15, ¶ 74. During this meeting, the participants discussed the "Castle Rock decision," referring to a legal decision about pay for hourly employees who engage in extracurricular activities. ECF No. 29 at 10, ¶ 25.

The parties dispute what was said before and during this meeting. Dr. Blackman alleges that before the administrative team meeting, Ms. Olsen, the HR Director, told Dr. Blackman that Ms. Olsen was worried about the Castle Rock decision because Ms. Olsen knew of multiple District employees who were being denied overtime pay, contrary to the Castle Rock decision. ECF No. 31 at 16, ¶ 77. Ms. Olsen also told Dr. Blackman that she was concerned that Dr. Swanson did not take the Castle Rock decision seriously. *Id.* Dr. Blackman then met with a District payroll officer and business manager and confirmed that classified staff working in dual roles were provided comp time in lieu of overtime pay. ECF No. 31 at 17, ¶ 78. During the administrative team meeting, Dr. Swanson informed the administrators of the District's practice of failing to pay classified staff overtime compensation. ECF No. 31 at 17-18, ¶ 79. Dr. Swanson stated that the District could not afford to pay the classified staff overtime compensation. *Id.* Dr.

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 6

Blackman then objected that this position violated wage law.  ECF No. 31 at 18, ¶ 80.  Defendants dispute this characterization of events.

Defendants contend that from January 2016 to present there have been no instances of documented overtime for any hourly employee of the District, that the District has never claimed an inability to pay overtime, and that the District has not had complaints or needed to investigate the non-payment of overtime.  ECF No. 29 at 10-11, ¶ 25.

6.   *November 30, 2017 Meeting*

On November 19, 2017, Dr. Swanson informed the District's Board that he wanted to place Dr. Blackman on administrative leave.  ECF No. 31 at 19, ¶ 86. On November 30, 2017, a meeting took place between Dr. Blackman, Dr. Swanson, and Ms. Olsen.  ECF No. 29 at 15, ¶ 36.  The parties dispute what occurred during this meeting.

According to Plaintiff, Dr. Swanson handed Dr. Blackman a letter informing her that she was terminated.[1]  ECF No. 31 at 20, ¶ 91.  Dr. Blackman asked what her options were, and Dr. Swanson responded that Dr. Blackman could either be fired or resign, that Dr. Swanson wanted a letter of resignation in writing from Dr.

---

[1]      While Dr. Blackman's declaration uses the word "terminated," the original letter does not.  *See* ECF No. 33 at 64.

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 7

1    Blackman, and that Dr. Blackman was effectively on administrative leave until she

2    resigned in writing.  ECF No. 31 at 21, ¶ 93.  Dr. Swanson offered Dr. Blackman a

3    three-month severance package, but Dr. Blackman rejected the offer.  *Id.* at ¶ 94.

4    Dr. Swanson did not offer Dr. Blackman another position with the District.  *Id.* at ¶

5    95.  Dr. Swanson told Dr. Blackman to remove her personal belongings from her

6    office and to turn in her keys.  *Id.* at ¶ 96.  Dr. Swanson also locked Dr. Blackman

7    out of her work email account and other District sites.  ECF No. 31 at 22, ¶ 97.  Dr.

8    Blackman told Dr. Swanson that she was not going to resign and objected to Dr.

9    Swanson telling OMS staff anything about the situation.  *Id.* at ¶¶ 98, 104.  Dr.

10   Swanson then informed OMS staff that Dr. Blackman resigned because of mental

11   health reasons.  ECF No. 31 at 23, ¶ 106.  The District then publicly announced

12   that Dr. Blackman resigned for medical reasons.  ECF No. 31 at 24, ¶¶ 110-111.

13   The District also informed local newspapers that Dr. Blackman had resigned for

14   medical reasons.  *Id.* at ¶ 112.

15        Defendants contend that Dr. Swanson told Dr. Blackman that she was not

16   performing her duties satisfactorily, and that Dr. Blackman had the option to

17   transfer to a job in the central office or to resign.  ECF No. 29 at 15, ¶ 36.  Dr.

18   Blackman responded that she would resign.  *Id.*  Dr. Blackman stated that she

19   wanted others to be told that she was resigning her position due to medical reasons.

20

1    *Id.* at 38.  Dr. Blackman accepted the offer of a three-month severance package

2    together with payment for her accrued leave.  ECF No. 29 at 16, ¶ 40.

3        *7.  Dr. Blackman Leaves OMS*

4        It is undisputed that Dr. Blackman did not provide a written letter of

5    resignation and did not return to work after November 30, 2017.  ECF No. 29 at

6    17, ¶ 45.  Dr. Blackman was paid in full under her contract for the 2017-2018

7    school year.  ECF No. 29 at 20, ¶ 53.  In early May 2018, Dr. Swanson offered Dr.

8    Blackman a special education teaching position.  ECF No. 29 at 21, ¶ 58.  Dr.

9    Blackman did not respond to this offer.  ECF No. 29 at 23, ¶ 61.  At some time

10    before the May 2018 offer, Dr. Blackman moved out of the Omak area.  *Id.*

11                            **DISCUSSION**

12    **A.  Summary Judgment Standard**

13        The Court may grant summary judgment in favor of a moving party who

14    demonstrates "that there is no genuine dispute as to any material fact and that the

15    movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In ruling

16    on a motion for summary judgment, the court must only consider admissible

17    evidence.  *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

18    The party moving for summary judgment bears the initial burden of showing the

19    absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

20    317, 323 (1986).  The burden then shifts to the non-moving party to identify

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 9

specific facts showing there is a genuine issue of material fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law.  *Anderson*, 477 U.S. at 248.  Further, a material fact is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party.  *Id.*  Summary judgment will thus be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  In ruling on a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

**B.  Count One: Wrongful Discharge in Violation of Public Policy**

Defendants move for summary judgment on Plaintiff's wrongful discharge in violation of public policy ("WDVPP") claim on the grounds that Plaintiff was not discharged, that the District did not perceive that Plaintiff complained about unlawful activity, that Plaintiff was not discharged for public-policy linked conduct, that the District had an overriding justification for its actions, that

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 10

Plaintiff did not follow the appropriate procedure for reporting government

wrongdoing, and that Plaintiff cannot establish pretext.  ECF No. 28 at 7.

The tort of WDVPP is narrowly construed and is generally applied to only

four scenarios: "(1) where employees are fired for refusing to commit an illegal

act; (2) where employees are fired for performing a public duty or obligation, such

as serving jury duty; (3) where employees are fired for exercising a legal right or

privilege, such as filing workers' compensation claims; and (4) where employees

are fired in retaliation for reporting employer misconduct, i.e., whistleblowing."

*Rose v. Anderson Hay and Grain Co.*, 184 Wash. 2d 268, 276 (2015).  When a

wrongful discharge claim does not clearly fit into one of these categories, the court

must instead consider the following "Perritt framework" to determine whether the

claimant was wrongfully discharged in violation of public policy: (1) the existence

of a clear public policy; (2) that discouraging the conduct in which the plaintiff

engaged would jeopardize the public policy; (3) that the public policy-linked

conduct caused the dismissal; and (4) that the defendant has not offered an

overriding justification for the dismissal of the plaintiff.  *Gardner v. Loomis

Armored Inc.*, 128 Wash. 2d 931, 941 (1996).  Here, because Plaintiff alleges she

was discharged in retaliation for whistleblowing, her claim clearly falls within the

fourth category of wrongful discharge and the Perritt analysis does not apply.

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 11

1    When a case does not invoke the Perritt framework, a claim for wrongful

2  discharge in violation of public policy is analyzed under the following burden-

3  shifting framework: (1) the plaintiff has the burden to prove his or her "discharge

4  may have been motivated by reasons that contravene a clear mandate of public

5  policy;" (2) the plaintiff must show that the public-policy-linked conduct was a

6  "significant factor" in the decision to discharge the plaintiff; (3) the burden then

7  shifts to the employer to "articulate a legitimate nonpretextual nonretaliatory

8  reason for the discharge;" and (4) the burden shifts back to the plaintiff to either

9  show "that the reason is pretextual, or by showing that although the employer's

10  stated reason is legitimate, the [public-policy-linked conduct] was nevertheless a

11  substantial factor motivating the employer to discharge the worker." *Martin v.*

12  *Gonzaga Univ.*, 191 Wash. 2d 712, 726 (2018).

13    As an initial matter, Defendants move for summary judgment on the grounds

14  that Plaintiff was never discharged from her position.  ECF No. 28 at 3-7.  Whether

15  an employee was discharged is a question of fact.  *Little v. Windermere Relocation,*

16  *Inc.*, 301 F.3d 958, 971 (9th Cir. 2002) (genuine issues of fact, including whether

17  Plaintiff was discharged or resigned, precluded summary judgment on WDVPP

18  claim).  Here, the parties dispute whether Plaintiff verbally offered to resign her

19  position during the November 30, 2017 meeting.  However, it is undisputed that

20  following the November 30, 2017 meeting, Plaintiff was placed on administrative

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 12

leave for the rest of the school year and was paid in full under her contract.  ECF No. 29 at 17, ¶ 45; at 20, ¶ 53.  In May 2018, Plaintiff was offered another position with the District.  ECF No. 29 at 21, ¶ 58.  However, Plaintiff did not respond to this offer.  ECF No. 29 at 23, ¶ 61.  Even construing the evidence in the light most favorable to Plaintiff, there is no genuine issue of fact that Plaintiff was never discharged from her position.  Instead, Plaintiff was placed on administrative leave with full pay and then declined to accept an offer to transfer to a different position.  *Korslund v. Dyncorp. Tri-Cities Servs., Inc.*, 121 Wash. App. 295, 316 (2004), *aff'd*, 156 Wash. 2d 168 (2005) (finding no discharge where employee continued to receive salary and benefits).

While Plaintiff asserts throughout her declaration and briefing that she was "fired," she has not presented evidence that supports this claim.  In order to succeed on her WDVPP claim, Plaintiff must establish that she was discharged from her position.  *Martin*, 191 Wash. 2d at 725.  Defendants are entitled to summary judgment on this claim.

## C.  Count Two: FLSA/Washington Wage Law Retaliation

Defendants move to dismiss Plaintiff's Fair Labor Standards Act ("FLSA") and Washington wage law retaliation claim.  ECF No. 28 at 10-11.  Section 215(a)(3) of the FLSA makes it unlawful "for any person … to discharge or in any other manner discriminate against any employee because such employee has filed a

complaint … under or related to this chapter."  29 U.S.C. § 215(a)(3).  Washington

law similarly prohibits employers from discharging or "in any other manner

discriminat[ing] against any employee because such employee has made any

complaint to his or her employer … that the employer has violated" Washington's

minimum wage law.  RCW 49.46.100.[2]  "To establish a prima facie case of

[FLSA] retaliation, a plaintiff must show: (a) that the Defendants [were] aware of

plaintiff's participation in a protected activity; (b) that an adverse employment

action was taken against plaintiff; and, (c) that the protected activity was a

substantial motivating factor in the adverse employment action as to that plaintiff."

*Bowen v. M. Caratan, Inc.*, 142 F. Supp. 3d 1007, 1021 (E.D. Cal. 2015) (citing

*Lambert v. Ackerley*, 180 F.3d 997, 1007 (9th Cir. 1999)).

---

[2]      It is unclear that this statutory provision creates a cause of action.  Other

provisions in Washington law provide enforcement mechanisms for whistleblower

retaliation.  *See* RCW 42.40.050 (State Employee Whistleblower Protection);

RCW 49.60.210 (WLAD Whistleblower Retaliation).  Where courts have

considered retaliation claims raised under the Minimum Wage Act, they have done

so via the public policy element of a WDVPP claim, not as a freestanding cause of

action.  *See Hume v. American Disposal Co.*, 124 Wash. 2d 656, 662 (1994);

*Thompson v. St. Regis Paper Co.*, 102 Wash. 2d 219, 226 (1984).

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 14

1    Defendants move for summary judgment on the ground that Plaintiff did not

2    adequately communicate her wage complaint.  ECF No. 28 at 11.  FLSA protection

3    "extends to employees who complain to their employer about an alleged violation

4    of the Act," not only those who file formal complaints with the Department of

5    Labor or in the courts.  *Lambert*, 180 F.3d at 1005.  "[S]o long as an employee

6    communicates the *substance* of his allegations to the employer (e.g., that the

7    employer has failed to pay adequate overtime, or has failed to pay the minimum

8    wage), he is protected by § 215(a)(3)."  *Id.* at 1008.  Genuine issues of material

9    fact preclude summary judgment here, as the parties dispute whether and how

10   Plaintiff communicated any allegation that the District failed to pay appropriate

11   overtime wages.  Construing the evidence in the light most favorable to Plaintiff, a

12   jury could reasonably conclude based on Plaintiff's testimony that Plaintiff clearly

13   communicated during the November 2017 administrative team meeting that the

14   District was illegally failing to pay overtime wages to classified staff.  Defendants

15   are not entitled to summary judgment on this element.

16   Defendants also move for summary judgment on the grounds that Plaintiff

17   could not show evidence of pretext.  ECF No. 28 at 11.  If the employer meets its

18   burden of production to articulate a legitimate, nondiscriminatory reason for the

19   challenged employment action, the burden shifts to the plaintiff to show "that the

20   articulated reason is pretextual 'either directly by persuading the court that a

discriminatory reason more likely motivated the employer or indirectly by showing

that the employer's proffered explanation is unworthy of credence.'" *Villiarimo v.*

*Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002) (citation omitted).

Taking the evidence in the light most favorable to Plaintiff, a reasonable jury

could conclude that Plaintiff's positive performance evaluation, the existence of

workplace conflict for an extended period before Plaintiff was placed on

administrative leave, and the temporal proximity between Plaintiff's reporting of

the overtime pay issue during the administrative team meeting and the meeting

when Plaintiff was told to resign or be fired collectively present evidence of

pretext.  Defendants are not entitled to summary judgment on this basis.

### D.  Count Three: Wrongful Discharge for Breach of Promise

Defendants move for summary judgment on Plaintiff's wrongful discharge

for breach of promise ("WDBP") claim on the grounds that Plaintiff was not

discharged from her position, that Plaintiff did not justifiably rely on a promise,

and that Defendants breached no promise.  ECF No. 28 at 11-13.

If an employer creates an atmosphere of job security and fair treatment with

promises of specific treatment in specific situations and an employee is induced

thereby to remain on the job and not actively seek other employment, those

promises are enforceable components of the employment relationship.  *Thompson*,

102 Wash. 2d at 230.  A specific treatment claim is not a species of express or

implied contract, but instead is based on a justifiable reliance theory.  *DePhillips v. Zolt Const. Co., Inc.*, 136 Wash. 2d 26, 34 (1998).  To prevail on a claim for specific treatment in specific situations, a plaintiff must prove: (1) a promise of specific treatment in a specific situation; (2) justifiable reliance on the promise by the employee; and (3) a breach of the promise by the employer.  *Bulman v. Safeway, Inc.*, 144 Wash. 2d 335, 344 (2001).

"Discharge of the employee is not a prerequisite to bringing" a WDBP claim.  *Korslund v. DynCorp Tri-Cities Servs., Inc.*, 156 Wash. 2d 168, 186 (2005), *overruled on other grounds by Rose*, 184 Wash. 2d 268.  However, here Plaintiff's claim for specific promises concerns policies and procedures for the discharge of a certificated administrator or employee.  *See* ECF No. 16 at 14-15, ¶¶ 62-65.  Even if these policies are sufficient to justifiably induce Plaintiff's reliance, the substance of the policies do not apply to Plaintiff's claim.  As discussed *supra*, the undisputed evidence shows that Plaintiff was never discharged from her position, so these policies do not apply.  Additionally, in opposition to summary judgment, Plaintiff identifies a series of District policies that govern whistleblower retaliation.  ECF No. 31 at ¶¶ 8-13.  However, these policies go beyond the scope of the allegations in Plaintiff's Amended Complaint, which only raises the WDBP claim regarding promises of procedural protections before discharge.  *See* ECF No. 16 at 14-15, ¶¶ 62-68.  Defendants are entitled to summary judgment on this claim.

### E.  Count Four: Section 1983, Procedural Due Process

Defendants move for summary judgment on Plaintiff's Fourteenth Amendment procedural due process claim.  ECF No. 28 at 16-19.  The Fourteenth Amendment protects against deprivation of life, liberty, or property without due process of law.  *Ingraham v. Wright*, 430 U.S. 651, 672 (1977).  Courts analyze procedural due process claims in two steps.  First, the court asks whether there was deprivation of a constitutionally protected liberty or property interest.  *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002).  If the court finds a protected interest, it proceeds to step two to determine if there was a denial of adequate procedural protections.  *Id.*

The Fourteenth Amendment protects the property interest an individual "has already acquired."  *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 576 (1972).  In order to assert a property interest for a procedural due process claim, a person must "have a legitimate claim of entitlement" to the protected interest.  *Town of Castle Rock, Colo. v. Gonzalez*, 545 U.S. 748, 756 (2005).  "Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law….'"  *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 538 (1985).  A statute that requires an employer to provide a specified reason for an adverse employment action creates a protected property interest for the

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 18

1    employee. *Sanchez v. City of Santa Ana*, 915 F.2d 424, 428-29 (9th Cir. 1990); *see*

2    *also Roybal v. Toppenish Sch. Dist.*, 871 F.3d 927, 931-32 (9th Cir. 2017)

3    (Washington statute requiring adverse change in school principal contract status to

4    be supported by probable cause gave rise to constitutionally protected property

5    interest).

6        Here, Plaintiff identifies a state law that requires pre-termination notice and

7    an opportunity for a hearing before a certificated employee may be terminated as

8    the source of Plaintiff's property right in her continued employment. ECF No. 30

9    at 14-15. However, as discussed *supra*, it is undisputed that following the

10   November 30, 2017 meeting, Plaintiff was placed on administrative leave for the

11   rest of the school year and was paid in full under her contract. ECF No. 29 at 17, ¶

12   45; at 20, ¶ 53. In May 2018, Plaintiff was then offered another position with the

13   District. ECF No. 29 at 21, ¶ 58. Plaintiff did not respond to this offer. ECF No.

14   29 at 23, ¶ 61. Even construing the evidence in the light most favorable to

15   Plaintiff, there is no genuine issue of fact that Plaintiff was never terminated from

16   her position. Accordingly, Plaintiff cannot claim her due process rights were

17   violated based on a statute governing the procedures by which a certificated

18

19

20

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 19

1    employee may be terminated.[3]  Plaintiff otherwise identifies no state law that

2    creates a protected property interest in an employee's avoidance of placement on

3    paid administrative leave.  Additionally, Plaintiff does not challenge the process by

4    which she was offered a different position in May 2018.  Defendants are entitled to

5    summary judgment on this claim.

6    **F.  Count Five: Section 1983, First Amendment**

7         Defendants move for summary judgment on Plaintiff's First Amendment

8    claim on the grounds that Plaintiff's speech was made in her official capacity and

9    therefore was not protected speech.  ECF No. 28 at 19-22.  Defendants also assert

10   they are entitled to *Monell* non-liability and qualified immunity.  ECF No. 28 at

11   13-16.

12   //

13   //

14   

15   [3]    Although Plaintiff's claim can be resolved in reference to the specific state

16   statute she cites as the source of her property interest, the Court also notes that

17   several other circuits and districts in this circuit have concluded as a matter of law

18   that placement "on paid administrative leave does not implicate a protected

19   property interest for the purposes of procedural due process claim."  *Reiber v. City*

20   *of Pullman*, 915 F. Supp. 2d 1091, 1101 (E.D. Wash. 2013) (gathering cases).

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 20

1      *1. Protected Speech*

2          Defendants move for summary judgment on the grounds that Plaintiff's

3      speech was made in her official capacity and therefore was not protected by the

4      First Amendment.  ECF No. 28 at 19-22.

5          "[A] governmental employer may impose certain restraints on the speech of

6      its employees, restraints that would be unconstitutional if applied to the general

7      public." *City of San Diego v. Roe*, 543 U.S. 77, 80 (2004).  To determine whether

8      a public employee has alleged a violation of her First Amendment rights as a result

9      of government retaliation for her speech, the Court considers whether (1) the

10     plaintiff spoke on a matter of public concern; (2) the plaintiff spoke as a private

11     citizen or public employee; (3) the plaintiff's protected speech was a substantial or

12     motivating factor in the adverse employment action; (4) the state had an adequate

13     justification for treating the employee differently from other members of the

14     general public; and (5) the state would have taken the adverse employment action

15     even absent the protected speech.  *Clairmont v. Sound Mental Health*, 632 F.3d

16     1091, 1103 (9th Cir. 2011).  The plaintiff bears the burden of proof on the first

17     three areas of inquiry, but the burden shifts to the government to prove the last two.

18     *Id*.  "[F]or purposes of a First-Amendment retaliation claim, being placed on

19     involuntary paid leave can *itself* be an adverse employment action." *Campbell v.*

20     *Hawaii Dep't of Educ.*, 892 F.3d 1005, 1016 (9th Cir. 2018) (emphasis in original);

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 21

1    *Dahlia v. Rodriguez*, 735 F.3d 1060, 1078 (9th Cir. 2013); *see also Kennedy v.*

2    *Bremerton Sch. Dist.*, 869 F.3d 813, 822 (9th Cir. 2017) (accepting coach's

3    placement on paid administrative leave as an adverse employment action).

4         Defendants argue Plaintiff's speech was made in her capacity as a public

5    employee.  ECF No. 28 at 19-22.  "[W]hen public employees make statements

6    pursuant to their official duties, those statements do not receive First Amendment

7    protection."  *Marable v. Nitchman*, 511 F.3d 924, 929 (9th Cir. 2007) (citing

8    *Garcetti v. Ceballos*, 547 U.S. 410, 414-17 (2006)).  "[T]he determination of

9    whether the speech in question was spoken as a public employee or a private

10   citizen presents a mixed question of fact and law."  *Posey v. Lake Pend Oreille*

11   *Sch. Dist. No. 84*, 546 F.3d 1121, 1129 (9th Cir. 2008).  "First, a factual

12   determination must be made as to the 'scope and content of a plaintiff's job

13   responsibilities.'"  *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 966 (9th

14   Cir. 2011) (citing *Eng v. Cooley*, 552 F.3d 1062, 1071 (9th Cir. 2009)).  This

15   inquiry should rely on practical considerations rather than mechanical reliance on

16   formal or written job descriptions.  *Id.*  Relevant factors to consider include

17   whether the employee communicated with individuals outside her chain of

18   command, whether the communication was a routine report within typical job

19   duties or broad concerns about corruption or systemic abuse, and whether the

20   employee speaks in contravention to a supervisor's orders.  *Dahlia*, 735 F.3d at

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 22

1074-75.  "Second, the 'ultimate constitutional significance' of those facts must be

determined as a matter of law." *Johnson*, 658 F.3d at 966 (citing *Eng*, 552 F.3d at

1071).  The plaintiff bears the burden of showing she spoke in the capacity of a

private citizen and not a public employee.  *Eng*, 552 F.3d at 1071.

Particularly instructive on this issue is *Hagen v. City of Eugene*, 736 F.3d

1251 (9th Cir. 2013), where K-9 Officer Hagen expressed his concerns about

officer safety to coworkers and others within the chain of command at the Eugene

Police Department.  The evidence at trial established that his concerns were

directed to his coworkers and his superior officers.  *Id*. at 1258.  In reversing the

jury's verdict in his favor, the Ninth Circuit held that the defendants were entitled

to judgment as a matter of law because "Hagen raised his concerns about his and

his fellow officers' job safety internally and within the chain of command [which]

cements our conclusion that his comments were made as a public employee, and

not as a private citizen." *Id*. at 1259.

Here, Defendants contend that any speech Plaintiff made about overtime pay

or ASB funds were within the scope of her job responsibilities.  ECF No. 28 at 21.

It is undisputed that the Plaintiff's statements were made at work while she was

attending "administrative team meetings," which was part of her job.  While others

attending may not have been within her direct chain of command, it is undisputed

that all attending were fellow employees of the District and attended as part of

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 23

their jobs.  In support of her argument, Plaintiff submits evidence that it was not

within her job duties to investigate or report on the District-wide ASB program,

but she also submits evidence that the ASB issue came to her attention in the

course of her duties of signing off on middle school athletic ASB expenditure

requests.  ECF No. 33-34, ¶¶ 32-33.  On this record and construing the evidence in

the light most favorable to Plaintiff, no jury could reasonably conclude that

Plaintiff's speech was made outside the scope of her job responsibilities and

therefore qualified for First Amendment protection.  Plaintiff's speech is akin to

that at issue in *Hagen*, wherein the employee became aware of an issue in the

scope of his employment duties and proceeded to report his concern about

workplace issues to supervisors and coworkers.  *Hagen*, 736 F.3d at 1258-59.

Defendants are entitled to summary judgment on this issue.

### 2.  *Municipal Liability*

Defendants move for summary judgment on the grounds that the District is

not subject to Section 1983 liability in this case.  ECF No. 28 at 13-15.  "In order

to set forth a claim against a municipality under 42 U.S.C. § 1983, a plaintiff must

show that the defendant's employees or agents acted through an official custom,

pattern or policy that permits indifference to, or violates, the plaintiff's civil rights;

or that the entity ratified the unlawful conduct."  *Shearer v. Tacoma Sch. Dist. No.*

*10*, 942 F. Supp. 2d 1120, 1135 (W.D. Wash. 2013) (citing *Monell v. Dep't of Soc.*

*Servs.*, 436 U.S. 658, 690-91 (1978)).  A plaintiff must show that "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged."  *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) (emphasis in original).  Section 1983 liability cannot attach to municipal inaction to correct a municipal employee's actions.  *Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992).  "To hold [municipalities] liable under section 1983 whenever policymakers fail to overrule the unconstitutional discretionary acts of subordinates would simply smuggle *respondeat superior* liability into section 1983 law…."  *Id.*

As an initial matter, Defendants are entitled to summary judgment on this issue because, as discussed *supra*, Plaintiff's speech was not protected by the First Amendment.  However, even if Plaintiff's speech was protected, Defendants would still be entitled to summary judgment on the municipal liability issue.

Defendants contend that Plaintiff cannot show that any District custom, pattern, or policy was the moving force behind any alleged violation of Plaintiff's First Amendment rights.  ECF No. 28 at 15.  In response, Plaintiff offers evidence that Dr. Swanson told the school board of his intention to place Plaintiff on administrative leave.  ECF No. 30 at 12.  Plaintiff asserts that the school board "ratified" this decision but presents no factual evidence to support this conclusion.  Here, the only evidence presented is that Dr. Swanson informed the school board

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 25

1    of his intention to place Plaintiff on administrative leave.  ECF No. 30 at 12.

2    Plaintiff acknowledges the record is otherwise "silent" on what information was

3    communicated or what actions were then taken by the school board.  *Id.*  Merely

4    being informed of Dr. Swanson's intention falls well below Plaintiff's burden to

5    show that the District's "deliberate conduct" was the "moving force" behind a

6    purported violation of her First Amendment rights.  *Brown*, 520 U.S. at 404.  The

7    District is entitled to *Monell* immunity on this claim, as well.

8         *3.  Qualified Immunity*

9         Dr. Swanson contends he is entitled to qualified immunity as to Plaintiff's

10   Section 1983 claims.  ECF No. 28 at 15-16.  This issue is now moot.

11   **G.  Count Six: Breach of Contract**

12        Defendants move for summary judgment on Plaintiff's breach of contract

13   claim on the grounds that Plaintiff was never discharged and that Plaintiff's

14   contract does not contain the terms that Plaintiff alleges were breached.  ECF No.

15   28 at 22-23.  Plaintiff does not oppose summary judgment on this claim.  ECF No.

16   30 at 7, n.6.  Defendants are therefore entitled to summary judgment on this claim.

17   **H.  Count Seven: WLAD Disability Discrimination**

18        Defendants move for summary judgment on Plaintiff's WLAD disability

19   discrimination claim.  ECF No. 23-28.

20

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 26

WLAD prohibits an employer from discharging any employee "because of … the presence of any sensory, mental, or physical disability."  RCW 49.60.180(2).  WLAD creates a cause of action for at least two different types of discrimination: disparate treatment and failure to accommodate.  The employee may allege failure to accommodate where the employer failed to take steps "reasonably necessary to accommodate the employee's condition."  *Doe v. Boeing*, 121 Wash. 2d 8, 17 (1993).  The employee may also file a disparate treatment claim if the employer discriminated against the employee because of the employee's condition.  *Riehl v. Foodmaker, Inc.*, 152 Wash.2d 138, 145 (2004), *abrogated on other grounds by Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas Cty.*, 189 Wash. 2d 516 (2017).

### 1. Disparate Treatment

Defendants move for summary judgment on the grounds that Plaintiff was not disabled, that Plaintiff was not subject to an adverse employment action, and that Plaintiff could not show pretext.  ECF No. 28 at 24.  WLAD disparate treatment claims apply the *McDonnell Douglas* burden-shifting framework.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  The employee must first establish a prima facie case of discrimination by proving the employee was (1) disabled, (2) subject to an adverse employment action, and (3) doing satisfactory work.  *Mackey v. Home Depot USA, Inc.*, 459 P.3d 371, 382 (Wash. 2020).  The

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 27

burden then shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Mikkelsen*, 189 Wash. 2d at 533. The burden then shifts back to the employee to "produce sufficient evidence showing that the defendant's alleged nondiscriminatory reason for the adverse employment action was a pretext." *Id.* at 534.

a. *Disability*

Defendants move for summary judgment on the ground that Plaintiff has not proved she has a disability. ECF No. 28 at 23-24. Under WLAD, a "disability" is "the presence of a sensory, mental, or physical impairment that: (i) is medically cognizable or diagnosable; or (ii) exists as a record or history; or (iii) is perceived to exist whether or not it exists in fact." R.C.W. 49.60.040(7)(a). In support of a prima facie case, a plaintiff "is required to present some evidence of a handicap and that the handicap was the reason for the discharge." *Simmerman v. U-Haul Co. of Inland Northwest*, 57 Wash. App. 682, 687 (1990). Plaintiff contends that she was diagnosed with depression and anxiety; that she was prescribed Fluoxetine (Prozac) for her mental health issues; that her depression and anxiety caused difficulty in judgment, sleep, concentrating, thinking, communicating, interacting with others, and working; and that she specifically communicated to Ms. Olson that she was suffering from depression. ECF No. 31 at 10-11, ¶¶ 52-54; 13 at ¶ 63. Defendants argue for the first time in their reply that Plaintiff's diagnosis is

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 28

hearsay.  ECF No. 47 at 12.  Defendant's statement of her own condition and course of treatment is not hearsay, and Plaintiff's other statements create a sufficient issue of fact as to whether Plaintiff had a disability.  *See Clipse v. Commercial Driver Servs., Inc.*, 189 Wash. App. 776, 793 (2015) (employee's testimony as to impairing side effects from medication was sufficient to establish the medication use as an impairment causing disability under WLAD).  Defendants are not entitled to summary judgment on this issue.

### b.  Adverse Employment Action

Defendants contend Plaintiff was never subject to an adverse employment action.  ECF No. 28 at 24.  For the purposes of a WLAD claim, "[a]n adverse employment action involves a change in employment conditions that is more than an inconvenience or alteration of one's job responsibilities, such as reducing an employee's workload and pay."  *Alonso v. Qwest Comm's Co., LLC*, 178 Wash. App. 734, 746 (2013).  Whether an action "is materially adverse depends on the circumstances of the particular case, and 'should be judged from the perspective of a reasonable person in the plaintiff's position.'"  *Tyner v. State*, 137 Wash. App. 545, 565 (2007).  Here, genuine issues of fact preclude summary judgment on this issue.  It is undisputed that Plaintiff was placed on administrative leave for the remainder of the school year and paid in full under her contract.  However, the parties dispute other circumstances of the November 30, 2017 meeting, including

1   whether Plaintiff verbally agreed to resign and accepted the offer of a severance

2   package.  Viewing the evidence in the light most favorable to Plaintiff, a

3   reasonable jury could conclude that the circumstances in which Plaintiff was

4   placed on leave, coupled with the length of the leave and her refusal to resign,

5   constituted a significant change in her employment conditions.  Defendants are not

6   entitled to summary judgment on this issue.

7           *c. Pretext*

8           Finally, Defendants move for summary judgment on the grounds that

9   Plaintiff could not show evidence of pretext.  ECF No. 28 at 24-25.  Under the

10  *McDonnell Douglas* framework, if the employer can articulate a non-

11  discriminatory reason for the adverse employment action, the burden then shifts

12  back to the employee to "produce sufficient evidence showing that the defendant's

13  alleged nondiscriminatory reason for the adverse employment action was a

14  pretext."  *Mikkelsen*, 189 Wash. 2d at 534.  Here, genuine issues of fact preclude

15  summary judgment.  Viewing the evidence in the light most favorable to Plaintiff,

16  a reasonable jury could conclude that Plaintiff's positive performance evaluation,

17  Dr. Swanson's failure to report perceived leadership issues to Plaintiff, Plaintiff's

18  disclosure that she was being treated for mental health conditions, and Dr.

19  Swanson's report to OMS staff that Plaintiff had resigned for "mental health

20  reasons" constitute evidence of pretext.  Defendants are not entitled to summary

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 30

1    judgment on this issue.

2         *2.  Failure to Accommodate*

3         Defendants move for summary judgment on Plaintiff's failure to

4    accommodate claim on the grounds that Plaintiff did not give notice of a disability.

5    ECF No. 28 at 26-27.  "WLAD requires an employer to reasonably accommodate

6    an employee with a disability unless the accommodation would pose an undue

7    hardship."  *Frisino v. Seattle Sch. Dist. No. 1*, 160 Wash. App. 765, 777 (2011).

8    "A reasonable accommodation must allow the employee to work in the

9    environment and perform the essential functions of her job without substantially

10   limiting symptoms."  *Id.* at 777-78.  To prove a failure to accommodate claim, a

11   plaintiff must show "(1) the employee suffered from a disability, (2) the employee

12   was qualified to do the job at issue, (3) the employee gave his or her employer

13   notice of the disability, and (4) the employer failed to reasonably accommodate

14   that disability."  *Mackey, Inc.*, 459 P.3d 371, 389 (Wash. App. 2020).

15        "The duty of an employer to reasonably accommodate an employee's

16   [disability] does not arise until the employer is 'aware of respondent's disability

17   and … limitations.'"  *Goodman v. Boeing Co.*, 127 Wash. 2d 401, 408 (1995)

18   (citation omitted).  "The employee bears the burden of giving the employer notice

19   of the disability … [which] then triggers the employer's burden to take 'positive

20   steps' to accommodate the employee's limitations."  *Id.*  The employee "retains a

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 31

1   duty to cooperate with the employer's efforts by explaining her disability and

2   qualifications." *Id.* "[W]here an employee determines he or she needs an

3   accommodation for a disability but fails to provide a medical nexus between the

4   disability and the need for accommodation, accommodation is not medically

5   necessary" and therefore not reasonable." *Riehl*, 152 Wash. 2d at 147.  An

6   interpersonal conflict that causes employee stress is not required to be

7   accommodated under WLAD.  *Snyder v. Med. Serv. Corp. of Eastern Washington*,

8   145 Wash. 2d 233, 241-42 (2001).

9       Plaintiff contends that she discussed her mental health symptoms with Ms.

10   Olsen and Dr. Swanson, and that at different times Plaintiff requested

11   accommodations in the form of an Employee Assistance Program, a mediator or

12   counselor to help resolve the work environment, and to have Dr. Swanson use his

13   authority to mediate disputes between the Roses and Plaintiff.  ECF No. 31 at 11-

14   14, ¶¶ 54-67.  Even construing this evidence in the light most favorable to Plaintiff,

15   Plaintiff's communications amount at most to a request to resolve the type of

16   interpersonal conflict for which WLAD requires no accommodation.  *Snyder*, 145

17   Wash. 2d at 241-42.  Because Plaintiff failed to provide notice of a need for a

18   medically necessary accommodation, Defendants had no duty to provide the

19   requested accommodations.

20

1    Plaintiff repeatedly complains that the Defendants did not engage in the

2    interactive process.  However, the "failure to engage in an interactive process does

3    not form the basis of a disability discrimination claim in the absence of evidence

4    that accommodation was possible."  *Fey v. State*, 174 Wash. App. 435, 453 (2013);

5    *Osborne v. Recreational Equip. Inc.*, 196 Wash. App. 1048 (2016) ("Washington

6    courts, like federal courts, do not recognize a freestanding interactive process claim

7    absent a possibility of accommodation as a basis of a disability discrimination

8    claim").

9    Defendants are entitled to summary judgment on Plaintiff's failure to

10    accommodate claim.

11    **I.  Count Eight: Invasion of Privacy by Public Disclosure of Private Facts**

12    Defendants move for summary judgment on Plaintiff's invasion of privacy

13    claim.  ECF No. 28 at 30-31.  "One who gives publicity to a matter concerning the

14    private life of another is subject to liability to the other for invasion of [her]

15    privacy, if the matter publicized is of a kind that (a) would be highly offensive to a

16    reasonable person, and (b) is not of legitimate concern to the public."  *Reid v.*

17    *Pierce Cty.*, 136 Wash. 2d 195, 205 (1998) (quoting Restatement (Second) of Torts

18    § 652D).

19    Defendants first argue that Plaintiff gave permission for the District to

20    announce that Plaintiff resigned for medical reasons.  ECF No. 28 at 31.  However,

1    this is a disputed issue of fact, so summary judgment is not appropriate.

2          Second, Defendants argue that the statement at issue in this case would not

3    be highly offensive to a reasonable person.  ECF No. 28 at 31.  "Every individual

4    has some phases of his life and his activities and some facts about himself that he

5    does not expose to the public eye, but keeps entirely to himself or at most reveals

6    only to his family or to close personal friends … [such as] many unpleasant or

7    disgraceful or humiliating illnesses."  *White v. Twp. of Winthrop*, 128 Wash. App.

8    588, 594 (2005) ((quoting Restatement (Second) of Torts § 652D cmt. b).  Genuine

9    issues of material fact preclude summary judgment.  The parties disagree about

10   what was said when Plaintiff's departure from OMS was announced.  Construing

11   the evidence in the light most favorable to Plaintiff, a jury could reasonably

12   conclude that an announcement that Plaintiff resigned for "mental health reasons"

13   would be highly offensive to a reasonable person.  *See White*, 128 Wash. App. at

14   596 ("The right to privacy acknowledges that the reason a person wishes to keep

15   his or her illness confidential is to avoid the pity that knowledge of such a disease

16   would engender in others.").  Defendants are not entitled to summary judgment on

17   this issue.

18         Finally, Defendants move for summary judgment on the grounds that

19   Plaintiff has not alleged or come forward with proof of any damages.  ECF No. 28

20   at 31.  If a plaintiff prevails in a privacy action, the plaintiff is entitled to damages

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ~ 34

for "(a) the harm to his interest in privacy resulting from the invasion; (b) his

mental distress proved to have been suffered if it is of a kind that normally results

from such an invasion; and (c) special damage of which the invasion is a legal

cause." *White*, 128 Wash. App. at 597. Plaintiff has offered no evidence of

damages she has suffered specific to the alleged statement that she resigned for

"mental health reasons" or that she resigned for "medical reasons," and otherwise

fails to respond to Defendants' argument in her briefing.

       At oral argument, Plaintiff argued that summary judgment on this issue is

not appropriate because the amount of damages should be assessed by the jury.

However, it is not the lack of an alleged dollar amount that makes Plaintiff's claim

insufficient. Rather, Plaintiff's statement of facts fails to present evidence of any

actual injury, such as emotional distress or reputational injury, that she has suffered

as a result of the conduct challenged throughout this case. ECF No. 31. What

evidence of emotional distress that is in the record is attributed to the workplace

culture at OMS rather than the end of Plaintiff's employment at OMS. *Id.* Even if

she establishes her invasion of privacy claim, Plaintiff has shown no damages.

Defendants are therefore entitled to summary judgment on this claim. *See Life

Designs Ranch v. Sommer*, 191 Wash. App. 320, 339-40 (2005) (affirming

dismissal of invasion of privacy claim where plaintiff provided no evidence of

damages caused by defendant).

**J.   Counts Nine and Ten: Invasion of Privacy by False Light / Defamation**

Defendants move for summary judgment on Plaintiff's false light and defamation claims.  ECF No. 28 at 31-33.  Because the legal arguments about these claims overlap, the Court considers them together.

"An invasion of privacy by false light arises when a defendant publishes statements that place a plaintiff in a false light if (1) the false light would be highly offensive and (2) the defendant knew of or recklessly disregarded the falsity of the publication and the subsequent false light it would place the plaintiff in."  *Seaquist v. Caldier*, 8 Wash. App. 556, 564 (2019), *review denied*, 192 Wash. 2d 1041 (2019).  "When a public figure plaintiff alleges false light, he must also prove the defendant acted with actual malice."  *Id.* at 573.

"Proof of defamation requires a showing of (1) falsity, (2) an unprivileged communication, (3) fault, and (4) damages."  *Corbally v. Kennewick Sch. Dist.*, 94 Wash. App. 736, 741 (1999) (internal quotation and citation omitted).  "The degree of fault is negligence for a private person and actual malice for a public figure or public official."  *Id.*

*1.  Actual Malice*

Defendants argue that Plaintiff is a public figure and lacks evidence of actual malice.  ECF No. 28 at 32.  Whether a plaintiff is a public figure is a question of law.  *Valdez-Zontek v. Eastmont Sch. Dist.*, 154 Wash. App. 147, 159

(2010).  For individuals in public positions, the court should consider "two pertinent variables: (1) the importance of the position held, and (2) the nexus between that position and the allegedly defamatory information specifically, how closely the defamatory material bears upon fitness for office."  *Clawson v. Longview Pub. Co.*, 91 Wash. 2d 408, 417 (1979).  In cases involving school district employees, the relationship between the statements at issue and the employee's duties under their public contract is directly relevant to the public figure analysis.  *Compare Valdez-Zontek*, 154 Wash. App. at 161 (school district administrator was a private figure for purpose of lawsuit concerning statements alleging an extramarital affair) *with Corbally*, 94 Wash. App. at 741 (teacher was a public official for purpose of lawsuit concerning statements regarding the manner in which the teacher performed his teaching duties pursuant to his public contract).  Here, the parties dispute the language used, but there is no dispute that Plaintiff's false light and defamation claims concern the announcement made explaining why Plaintiff would no longer be the principal of OMS.  This is directly related to Plaintiff's ability to perform her duties under her public contract, so the public figure standard applies, and Plaintiff must show actual malice.

"A defendant acts with malice when he knows the statement is false or recklessly disregards its probable falsity."  *Duc Tan v. Le*, 177 Wash. 2d 649, 669 (2013).  Here, genuine issues of fact preclude summary judgment because the

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 37

1    parties dispute the contents of the statement at issue and the events leading up to

2    the statement.  Construing the evidence in the light most favorable to Plaintiff, a

3    jury could reasonably conclude that Plaintiff's definitive statement to Dr. Swanson

4    that she would not resign from her position demonstrates Dr. Swanson knew his

5    statement was false when he announced to OMS staff that Plaintiff resigned, either

6    for "mental health" or for "medical" reasons.  Defendants are not entitled to

7    summary judgment on this issue.

8        *2.   Damages*

9        Defendants also move for summary judgment on the ground that Plaintiff

10   cannot present evidence of damages.  ECF No. 28 at 32.  At oral argument,

11   Plaintiff conceded that the statements do not constitute defamation per se.

12   Accordingly, damages are not assumed and must be proven by Plaintiff.  "False

13   light claims differ from defamation claims because false light claims focus on

14   compensation for mental suffering rather than reputation."  *Life Designs Ranch*,

15   191 Wash. App. at 339.

16       Here, as discussed *supra*, Plaintiff has put forth no evidence of damages.

17   Indeed, Plaintiff's statement of facts makes no mention of any injury that she has

18   suffered as a result of Dr. Swanson's reported statement that Plaintiff resigned for

19   "mental health reasons" or for "medical reasons."  A plaintiff must prove damages

20   to recover on either a defamation or false light claim.  *See Corbally*, 94 Wash.

App. at 741; *Life Designs Ranch*, 191 Wash. App. at 339-40.  Plaintiff has failed to meet her burden to put forth evidence in support of an element essential to her claim.  *Celotex*, 477 U.S. at 322.  Because Defendant has not offered any evidence of damages, Defendants are entitled to summary judgment on these claims.

### K.  Count Eleven: Blacklisting

Defendants move for summary judgment on Plaintiff's blacklisting claim. ECF No. 28 at 33-34.  Plaintiff does not oppose summary judgment on this claim. ECF No. 30 at 7, n.6.  Defendants are therefore entitled to summary judgment on this claim.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

Defendants' Motion for Summary Judgment (ECF No. 28) is **GRANTED** in part and **DENIED** in part.

The District Court Executive is directed to enter this Order and furnish copies to counsel.

**DATED** June 11, 2020.



THOMAS O. RICE
Chief United States District Judge

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 39