*Honorable Thomas O. Rice*

MICHAEL B. LOVE
MICHAEL LOVE LAW, PLLC
905 West Riverside Ave. Ste. 404
Spokane, Washington 99201
Telephone:  (509) 212-1668
mike@michaellovelaw.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHRIS NEESE BLACKMAN,<br><br>Plaintiff,<br><br>vs.<br><br>OMAK SCHOOL DISTRICT AND KENNETH ERIK SWANSON,<br><br>Defendant. | No.  2:18-CV-00338-TOR<br><br>PLAINTIFF'S TRIAL BRIEF |

## I.   INTRODUCTION

In accordance with the Court's Jury Trial Scheduling Order ECF No. 11, Plaintiff Chris Blackman ("Dr. Blackman") submits the following trial brief in support of her claims and proposed jury instructions.

## II.   FACTUAL BACKGROUND

PLAINTIFF'S TRIAL BRIEF - 1

**1. Dr. Blackman's employment, work environment and performance.**

Dr. Blackman was hired by the Defendant Omak School District ("District") as a certificated administrator under a one year contract effective July 1, 2016. ECF No. 31, Page ID. 540, ¶ 37.

Dr. Blackman was the principal of Omak Middle School ("Middle School") during the 2016-2017 school year. ECF No. 31, Page ID. 539, ¶ 31.

During her employment with the District Dr. Blackman worked closely with three individuals: individual Defendant Dr. Kenneth Swanson ("Dr. Swanson") the Superintendent for the District; Michael Porter[1] at the time the Director of Teaching and Learning for the District; and Leanne Olson Director of Human Resources. Dr. Swanson and Mr. Porter were her supervisors. ECF No. 31, Page ID. 540, ¶ 38.

Dr. Blackman's performance with the District during the 2016-2017 school year was rated "proficient" which is the second highest rating a certificated employee can receive by her then supervisor Dr. Swanson. ECF No. 31, Page ID. 540, ¶¶ 32, 39, 41, 43.

Dr. Swanson never advised Dr. Blackman of any serious concerns with her performance during the 2016-2017 school year. ECF No. 31, Page ID. 540, ¶ 40.

---

[1] Mr. Porter was recently selected to replace Dr. Swanson as Superintendent of the District.

PLAINTIFF'S TRIAL BRIEF - 2

Dr. Swanson had been quite complimentary of Dr. Blackman's "leadership style, perspective and voice" in his discussions with a consultant from the Office of Superintendent for Public Instruction ("OSPI") Kathy Curtiss ("Ms. Curtiss") who was working with Dr. Blackman at the Middle School to improve student learning, teaching and test scores. ECF No. 31, Page ID. 539, ¶¶ 21, 33.

Mr. Porter had also shared with Ms. Curtiss how impressed he was with Dr. Blackman's leadership and asked her (Curtiss) "how can we help the other administrators become facilitators like Dr. Blackman." ECF No. 31, Page ID. 539, ¶ 34.

Dr. Blackman complained to both Dr. Swanson, Ms. Olson and Mr. Porter that a few teachers, in particular, Jenny and Randy Rose, were creating a hostile work environment and that it was impacting her health, but neither of them did anything to help her. ECF No. 31, Page ID. 542, ¶ 49.

**2. Evidence supporting disability discrimination claim**

In January of 2017, Dr. Blackman was diagnosed by her healthcare provider with depression and anxiety. Dr. Blackman was prescribed Prozac 10 mg. every other day to treat her mental health issues related to the work stress she was experiencing. ECF No. 31, Page ID. 542, ¶¶ 50, 51, 52 and 53.

While employed with the District and up until November 30, 2017, the depression and anxiety that Dr. Blackman was experiencing at work was causing

PLAINTIFF'S TRIAL BRIEF - 3

1  her difficulty with judgment, sleep, concentrating, thinking, communicating,
2  interacting with others and working. ECF No. 31, Page ID. 543, ¶ 54

3  On October 4, 2017, Dr. Blackman's healthcare provider had increased the
4  frequency of Fluoxetine to one 10 mg daily due to the prior prescription failing to
5  relieve the anxiety and depression that she was suffering from and that was
6  substantially limiting her ability to function as a principal. ECF No. 31, Page ID.
7  544, ¶ 61

8  In September or October of 2017, Dr. Blackman had specifically told Ms.
9  Olson that she was suffering from depression. ECF No. 31, Page ID. 545, ¶ 63

10 The conversations that Dr. Blackman was having with Dr. Swanson, Ms.
11 Olson and Mr. Porter about her health, diagnosis, symptoms and medication were
12 ongoing, but increased in the fall of 2017, from September to November as the
13 working environment became increasingly unbearable. On one occasion, Dr.
14 Blackman even discussed her health, diagnosis, symptoms and medication with a
15 school board member Dennis Carlton. ECF No. 31, Page ID. 545-546, ¶ 67

16 On more than one occasion, with the last being in the fall of 2017, Dr.
17 Swanson made comments to Dr. Blackman when he visited the middle school:
18 "Every time I come to the middle school another employee is on medication." ECF
19 No. 31, Page ID. 546, ¶ 29

20

PLAINTIFF'S TRIAL BRIEF - 4

On November 8, 2017, in an email to Dr. Swanson with a copy to Ms. Olson and Mr. Porter, Dr. Blackman advised them of the "emotional toll this hostile work environment has taken on my health is indescribable. I have asked you before to intervene and make it stop. I am asking again. Please help." ECF No. 31, Page ID. 551, ¶ 84

Dr. Blackman received no response to her email either in writing or verbally, in particular, from Ms. Olson the Director of Human Resources. ECF No. 31, Page ID. 551, ¶ 85

On November 19, 2017, Dr. Swanson informed the District's Board that he wanted "to place Dr. Blackman on administrative leave." ECF No. 31, Page ID. 551, ¶ 86

3. **Evidence Supporting FLSA Retaliation Claim**

During the early part of November 2017, an administrative team meeting took place between Dr. Blackman, Dr. Swanson, and other District Administrators who were outside of Dr. Blackman's chain of command. ECF No. 31, Page ID. 547, ¶ 74

Prior to the meeting a teacher Zachary Reese at Omak Middle School had raised the issue of non-payment of overtime to the staff to Dr. Blackman and she responded "this is wrong, they can't do that, I'm going to raise the issue with Swanson." ECF No. 31, Page ID. 547, ¶ 75

PLAINTIFF'S TRIAL BRIEF - 5

This was not the first time Dr. Blackman had a conversation with Mr. Reese about classified pay. Dr. Blackman had discussed specifically para-educators who provided 24/7 care and supervision of students with disabilities at Camp D – a day camp for 6th graders and not being paid even close to what they were entitled; and also relating to the after school program with para-educators and kitchen staff serving in dual roles and working in excess of 40 hours. ECF No. 31, Page ID. 548, ¶ 76

Before the meeting November of 2017 took place Ms. Olson and Dr. Blackman had a conversation. The subject of the conversation between Ms. Olson and Dr. Blackman arose out of a decision in Oregon (Castle Rock) where a District was held liable for not paying classified staff wages owed who were working other jobs for the District outside of regular working hours. For example, a school employee whose regular job for the District is that of a librarian, but then also serves as a volleyball coach for the District at the high school or junior high after school on weekends and is not paid appropriately either regular wages or overtime compensation. Ms. Olsen disclosed to Dr. Blackman that she was very worried about this Castle Rock decision because she was aware of multiple employees who were being denied overtime pay. Ms. Olson further disclosed to Dr. Blackman that she had discussed the Castle Rock decision with Dr. Swanson, but that he did not

PLAINTIFF'S TRIAL BRIEF - 6

1  seem to take the issue seriously. The meeting between Ms. Olson and Dr. Blackman
2  took place in Ms. Olson's office. ECF No. 31, Page ID. 548, ¶ 77.
3      Earlier before the November 2017 meeting, Dr. Blackman and met with
4  Rachelle Gaines, payroll officer, and Scott Haeberle, business manager, relating to
5  several classified staff who had worked in excess of forty (40) hours in a single
6  work week due to chaperoning District students to a college visit to Washington
7  State University ("WSU"). The work day was about thirteen (13) hours. The
8  concern was that the time cards had been written that would put them at overtime
9  pay. Dr. Blackman recalled confirming that with Ms. Gaines and Mr. Haeberle.
10 Mr. Haeberle responded: "That's not how we do it in Omak" stating that many
11 classified staff work in dual roles putting them over 40 hours and that the District
12 provides comp time in lieu of overtime pay. Mr. Haeberle confirmed that no choice
13 is given to employees as to whether they take comp or overtime pay; and comp is
14 provided by the District at 1:1 ratio rather than time and a half 1 ½ or double time.
15 Dr. Blackman objected to this practice and told Mr. Haeberle that is not what she
16 had told the classified staff and she did not believe that was correct under the law.
17 Dr. Blackman could sense that this conversation was making Ms. Gaines very
18 uncomfortable since as a payroll officer she would be charged with knowing the
19 law. ECF No. 31, Page ID. 549, ¶ 78
20

PLAINTIFF'S TRIAL BRIEF - 7

1   At the November 2017 meeting Dr. Swanson led a discussion and informed all of the administrators at the meeting that the District had failed to pay certain classified staff working in dual roles overtime wages and that many classified staff were working in excess of forty (40) hours per week without overtime compensation. Dr. Swanson stated the District could not afford to pay classified staff working dual jobs for the District overtime. ECF No. 31, Page ID. 549-550, ¶ 79

Dr. Blackman immediately objected to Dr. Swanson's plan and position at the meeting in front of other administrators who were outside of her chain of command that the District was violating the wage law, committing fraud, and that as principle she had complete authority to sign off on time cards and extra duty contracts and would not be a party to illegal activity. ECF No. 31, Page ID. 550, ¶ 80

On or around November of 2017, Dr. Blackman had been cooperating with an investigator hired by the District, Alan Keys, from Clear Risk Solutions in response to another teacher Michelle Covey filing a formal complaint of hostile work environment against another teacher Randy Rose. ECF No. 31, Page ID. 550, ¶ 81

During the conversations with Mr. Keys, Dr. Blackman had disclosed to him, in part, the affect the work environment was having on her health, and her concerns

PLAINTIFF'S TRIAL BRIEF - 8

about alleged unpaid overtime to classified staff. ECF No. 31, Page ID. 550-551, ¶ 82

Shortly after her disclosures to Mr. Keys, around November 29, 2017, Dr. Swanson voiced his displeasure to Dr. Blackman for sharing the information with Mr. Keys relating to her health and the alleged unpaid overtime by bluntly telling her: "I really wish you hadn't done that." ECF No. 31, Page ID. 551, ¶ 83

**4. Dr. Blackman is notified of her removal on November 30, 2017, and placement on administrative leave – evidence supporting both disability discrimination claim and FLSA Retaliation claim.**

On November 30, 2017, Dr. Blackman was called into a meeting at the central office. The meeting took place in Ms. Olson's office. Present at the meeting were Dr. Blackman, Dr. Swanson and Ms. Olson. Dr. Swanson handed Dr. Blackman a letter dated November 30, 2017, informing her of her removal as principal and placement on administrative leave. ECF No. 31, Page ID. 552, ¶ 91

Prior to November 30, 2017, Dr. Blackman had no prior notice either verbally or in writing from Dr. Swanson that he was going to remove her as principal of the Middle School and place her on administrative leave pending receipt of her letter of resignation. ECF No. 31, Page ID. 553, ¶ 92

Dr. Blackman told Dr. Swanson she was not going to resign, and she did not want him telling anyone the reasons for why she was no longer the principal of the

PLAINTIFF'S TRIAL BRIEF - 9

Middle School (including the staff) until she had a chance to think about her options. ECF No. 31, Page ID. 554, ¶ 99

Dr. Blackman told Dr. Swanson that "educators don't leave in the middle of the school year unless for a serious reason and get jobs when they are fired because it is career suicide." ECF No. 31, Page ID. 554, ¶ 100

Dr. Swanson never offered or discussed with Dr. Blackman another job or position with the District and there is no reference to it in the letter he provided to her dated November 30, 2017, and delivered to her that same day. ECF No. 31, Page ID 552-553, ¶¶ 91, 95

Dr. Swanson told Dr. Blackman to remove her personal belongings from her office at OMS, and turn in her keys. ECF No. 31, Page ID. 554, ¶ 96

Dr. Blackman later learned that Dr. Swanson had locked her out of her work email and other District sites, e.g. EDS and Skyward. ECF No. 31, Page ID. 554, ¶ 97

On November 30, 2017, Dr. Swanson informed the staff of the middle school that Dr. Blackman "resigned because of mental health reasons" and that Mr. Porter was now interim principal. ECF No. 31, Page ID. 555, ¶ 106

On December 1, 2017, the District provided a letter to the students of the middle school to take home to their parents that Dr. Blackman had "resigned for medical reasons." ECF No. 31, Page ID. 556, ¶ 110

PLAINTIFF'S TRIAL BRIEF - 10

The District sent an email, made a "robocall" and posted on the District's Facebook page that Dr. Blackman "resigned for medical reasons." ECF No. 31, Page ID. 556, ¶ 111

The District also contacted the Wenatchee World and Omak Chronicle newspapers and informed them in a headline that Dr. Blackman had "resigned for medical reasons." ECF No. 31, Page ID. 556, ¶ 112

This was the only reason ("resigned for medical reasons") that Mr. Porter was told by Dr. Swanson relating to Dr. Blackman no longer being the principal of the middle school. ECF No. 31, Page ID. 556, ¶ 113

On December 8, 2017, Dr. Blackman sent an email to Dr. Swanson, Ms. Olson, Mr. Porter and the Board informing them that she had not resigned for medical reasons; that she believed she had been retaliated against as a *whistleblower*; objected to the District's false characterization of her departure from the District; and demanded a retraction which was never received. ECF No. 31, Page ID. 556, ¶ 114

The District and Dr. Swanson did not respond to Dr. Blackman's email of December 8, 2017, until May 10, 2018, after the District and Dr. Swanson were both aware that she had (a) already retained counsel; (b) had moved out of the area; (c) was applying for other jobs; (d) was in settlement discussions and (e) had filed

PLAINTIFF'S TRIAL BRIEF - 11

a Notice of Tort Claim against both the District and Dr. Swanson on March 14, 2018.  ECF No. 31, Page ID. 557, ¶ 115

### III.    LEGAL ANALYSIS

**1.  Jury Instructions**

In reviewing jury instructions, the standard is "whether, viewing the jury instructions as a whole, the trial judge gave adequate instructions on each element of the case to ensure that the jury fully understood the issues." *Los Angeles Memorial Coliseum Comm. v. National Football League*, 726 F.2d 1381, 1398 (9th Cir.)

Jury instructions are adequate if they allow the parties to argue their theories of the case, do not mislead the jury, and when read as a whole properly inform the jury of the applicable law. *Cox v. Spangler*, 141 Wn.2d 431, 442 (2000)

**2.  Disability Discrimination (Disparate Treatment)**

a.  Liability

The elements of a disability discrimination disparate treatment claim are set out in Washington Pattern Jury Instruction ("WPI") 330.01, 330.32.  In order to establish her claim of disability discrimination, Dr. Chris Blackman has the burden of proving each of the following propositions:

(1)That the Omak School District and Dr. Kenneth Swanson took an adverse employment action against Dr. Chris Blackman; and

PLAINTIFF'S TRIAL BRIEF - 12

(2)That Dr. Chris Blackman's disability or the perception of her disability was a substantial factor in Omak School District and Dr. Kenneth Swanson's decision to remove her as principal of the Omak Middle School. Dr. Blackman does not have to prove that disability was the only factor or the main factor in the decision. Nor does Dr. Blackman have to prove that she would have been retained but for her disability. WPI 330.01, 330.32

An adverse action is not limited to discharge or firing, but involves other actions on the part of the defendant employer that may either singularly or taken together constitute an adverse action, including reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. *Boyd v. State*, 187 Wash. App. 1, 11-12; *Kirby v. City of Tacoma*, 124 Wash. App. 454 (2004); *Alonso Qwest Communications Co., LLC*, 178 Wash. App. 734, 747 (2013) (whether loss of certain van and cellular phone benefits constituted adverse employment action an issue of fact for the jury); *Davis v. W. One Auto Grp.*, 140 Wash. App. 449 (2007) (failure to give plaintiff same recognition as employee of the month, such as posting his picture or letting him drive the car of his choice, was sufficient to state a claim); *Blackburn v. Dep't of Soc. & Health Servs.*, 186 Wn.2d 250 (2016) (decision not to schedule African-American staff on a single weekend because of Western State Hospital resident's violent racist conduct could constitute disparate treatment "in the terms and conditions of employment." The pattern jury

PLAINTIFF'S TRIAL BRIEF - 13

instruction in disparate treatment cases defines "adverse employment action" as follows: "An adverse employment action is one that materially affects the terms, conditions or privileges of employment." WPI 330.01.02

If an employer perceives an employee to have a disability and treats the employee adversely based on that perception, the employee can establish a disparate treatment claim even though the employee is not in fact disabled. *Barnes v. Washington Natural Gas Co.*, 22 Wash. App. 576 (1979); WPI 330.31

The "substantial factor" test, rather than the "determining factor" test is the appropriate standard for deciding whether an employer's adverse employment decision was "because of" one of the prohibited factors enumerated under RCW 49.60.180(2). *MacKay v. Acorn Custom Cabinetry, Inc.*, 127 Wn.2d 302, (1995). "Substantial factor" means a significant motivating factor in bringing about the employer's decision. WPI 330.01.01

The language defining "substantial factor" was approved by the Washington Supreme Court. *Scrivener v. Clark College*, 181 Wn.2d 439, 444 (2015), citing *Mackay v. Acorn Custom Cabinetry, Inc.*, 127 Wn.2d at 310. See also *Currier v. Northland Services, Inc.*, 182 Wash. App. 733, 746-47 (2014).

**b. Damages**

Under the Washington Law Against Discrimination ("WLAD") if Dr. Blackman proves that her disability was a substantial factor in the District and Dr.

PLAINTIFF'S TRIAL BRIEF - 14

Swanson's decision to remove her as principle and place her on administrative leave for the rest of the school year she will be entitled to recover damages under the WLAD if she can prove either economic or general damages or both. RCW 49.60.180(3)

Dr. Blackman is not required to prove a separate claim that he or she was discharged or constructively discharged in order to seek damages for front and back pay. *Martini v. Boeing Co.*, 137 Wn.2d 357, 363-364, 367-69, 370-72 (1999); RCW 49.60.030(2)

Dr. Blackman may recover damages for emotional distress so long as she presents sufficient evidence to support a damages award. *Bunch v. King County Dep't of Youth Servs.,* 155 Wn.2d 165 (2005). Dr. Blackman need only produce "sufficient evidence to convince an 'unprejudiced, thinking mind' of his anguish." Id. at 181. Such evidence can be provided by Dr. Blackman's own testimony; evidence from a health care professional is not required to prove emotional distress. Id.

Under WLAD, damages awarded by a jury are taxable income to Dr. Blackman. Dr. Blackman may recover an offset for the federal income tax consequences of a damages award under RCW 49.60.030(2). *Blaney v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 160,* 151 Wn.2d 203, 217-18 (2004)

PLAINTIFF'S TRIAL BRIEF - 15

(the offset is recoverable under RCW 49.60.030(2)'s "other appropriate remedy" language rather than as actual damages.)

### 3. FLSA Retaliation Claim

#### a. Liability

In order to establish liability under the federal Fair Labor Standards Act ("FLSA") Dr. Blackman has the burden of proving the following elements:

(1) That she engaged in protected activity under federal law;

(2) That the Omak School District and Dr. Swanson subjected her to an adverse employment action; and

(3) The protected activity was a "motivating reason" for the adverse action. *Avila v. L.A. Police Dep't*, 758 F.3d 1096, 1109 (9th Cir. 2014); *Lambert v. Ackerley*, 180 F.3d 997 (9th Cir. 1999).

Internal workplace complaints of an alleged FLSA violation by an employee to her employer is sufficient to trigger protection under the FLSA retaliation provision. *Lambert v. Ackerley*, 180 F.3d 997 (9th Cir. 1999).

In order to prove her claim of FLSA retaliation, Dr. Blackman does not have to prove an actual violation of the law to be engaged in protected activity. A good faith belief by Dr. Blackman that there was a violation is sufficient. FLSA 15(a)(3); *Love v. RE/MAX*, 738 F.2d 383 (10th Cir. 1984); *Sapperstein v. Hager*, 188 F.3d 852 (7th Cir. 1999)

PLAINTIFF'S TRIAL BRIEF - 16

A retaliatory action under the FLSA can be something less than an actual discharge or demotion. An action taken by an employer is retaliatory if a reasonable employee would have found the challenged action materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a FLSA complaint. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)

### b. Damages

#### i. Back Pay and Liquidated Damages

Under the FLSA, if Dr. Blackman proves that she was retaliated against for reporting an alleged violation of the FLSA she is entitled to "the payment of wages lost and additional equal amount as liquidated damages." 29 U.S.C. §216(b); *Mitchell v. Robert DeMario Jewelry*, 361 U.S. 288 (1960).

Liquidated damages are properly considered an awarded if the jury finds that there was a willful violation committed by the employer. *Acosta v. Zhao Zeng Hong*, 704 Fed. Appx. 661, 665 (9th Cir. 2017)

An employer, in order to avoid the imposition of liquidated damages under the FLSA, must be able to prove that the adverse employment action taken was in good faith and that it had reasonable grounds for believing that the action was not a violation of the FLSA. *Avitia v. Metropolitan Club*, 49 F.3d 1219 (7th Cir. 1995)

#### ii. Front Pay

PLAINTIFF'S TRIAL BRIEF - 17

Under the FLSA employees who are not reinstated may be entitled to front pay to compensate them for future wage loss expected to result from the unlawful retaliation. In *Avitia v. Metropolitan Club,* the Seventh Circuit held that front pay is an appropriate remedy in FLSA retaliation cases. *Avitia v Metropolitan Club*, 49 F.3d at 1231

### iii.  Compensatory and Punitive Damages

Compensatory damages are recoverable in FLSA retaliation cases. *Lambert v. Ackerley*, 180 F.3d 997 (9th Cir. 1999)

Punitive damages are also recoverable in FLSA retaliation cases. *Travis v. Gary Community Mental Health Center*, 921 F.3d 108 (7th Cir. 1990).

## IV.  CONCLUSION

Dr. Blackman respectfully requests the consideration and submittal of her jury instructions by the Court.

DATED this 22nd day of June, 2020.

 S/Michael B. Love
MICHAEL B. LOVE
Michael Love Law, PLLC
905 West Riverside Ave. Ste. 404
Spokane, WA 99201
mike@michaellovelaw.com
Telephone: 509.212.1668

PLAINTIFF'S TRIAL BRIEF - 18

# CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2020, I electronically filed the above-captioned document with the Clerk of the Court using the CM/ECF System which will cause the attorneys who have appeared in this action to be served with this document.

DATED this 22nd day of June, 2020.

*S/ Michael B. Love*
MICHAEL B. LOVE
Michael Love Law, PLLC
905 West Riverside Ave. Ste. 404
Spokane, WA 99201
Telephone: (509) 212-1668
Email: mike@michaellovelaw.com

PLAINTIFF'S TRIAL BRIEF - 19