UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHRIS NEESE BLACKMAN,<br><br>                    Plaintiff,<br><br>     v.<br><br>OMAK SCHOOL DISTRICT and<br>KENNETH ERIK SWANSON,<br><br>                    Defendants. | NO. 2:18-CV-0338-TOR<br><br>ORDER GRANTING DEFENDANTS'<br>MOTION FOR PARTIAL<br>SUMMARY JUDGMENT RE<br>PLAINTIFF'S FLSA CLAIM |

BEFORE THE COURT is Defendants' Motion for Partial Summary Judgment on Plaintiff's Fair Labor Standards Act ("FLSA") claim. (ECF No. 97). This matter was submitted for consideration without oral argument. The Court has reviewed the record and files herein, and is fully informed. For the reasons discussed below, Defendants' Motion for Partial Summary Judgment (ECF No. 97) is **granted**.

ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT ~ 1

1

**BACKGROUND**

2      This case concerns Plaintiff's employment as principle of Omak Middle

3   School ("OMS").  Plaintiff filed an Amended Complaint on June 18, 2019, which

4   is now the operative Complaint.  ECF No. 16.  The following facts are not in

5   dispute, except where noted.

6      Plaintiff was hired by Omak School District (the "District") as a middle

7   school principal assigned to OMS.  ECF No. 16 at 3, ¶ 13.  The parties dispute

8   whether Plaintiff was charged with FLSA oversight and compliance.  Plaintiff

9   contends she was not responsible for enforcing or making sure the District

10  complied with the FLSA.[1]  ECF No. 98 at 2-3.  Defendants disagree, citing to

11  Washington statutes, regulations, and caselaw to support their assertion that

12  Plaintiff, as principal of the OMS, was also responsible for FLSA compliance.

13  ECF No. 100 at 3-4.  Defendants assert Plaintiff's statements that she told

14  classified staff they would get paid overtime, and her complaints to two other staff

15  members about the District's practice and policy of providing compensatory time

16

17

---

18  [1]      In support of this statement, Plaintiff cites to her own Declaration.  ECF No.

19  33 at 2, ¶ 4; *id*. at 15-16, ¶ 37.  However, neither paragraph mentions the FLSA or

20  Plaintiff's duties as a middle school principal.  *Id*.

ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT ~ 2

("comp time") in lieu of overtime, further indicate Plaintiff had the responsibility to ensure compliance with overtime wage law. *Id.* at 9-10.

The parties do not dispute that in early November 2017, an "administrative team meeting" took place between Dr. Blackman, Dr. Swanson, and other District administrators who were outside of Dr. Blackman's chain of command. ECF No. 31 at 15, ¶ 74. During this meeting, the participants discussed the "Castle Rock decision,"[2] referring to a legal decision about pay for hourly employees who engage in extracurricular activities. ECF No. 29 at 10, ¶ 25.

---

[2]    The "Castle Rock decision" apparently refers to the Washington Public Employment Relations Commission, Castle Rock School District Decision 4722-B (1995), which discusses the nuanced distinctions regarding salaried employees, hourly employees, certificated employees, dual roles, volunteers, moonlighting, extracurricular activities jobs, collective bargaining, union contracts, etc. Concerning the FLSA, the Department of Labor promulgated rules and regulations exempting certain employees, including "teachers and academic administrative personnel" from FLSA coverage. *See e.g.,* 29 C.F.R. part 541; 81 FR 32391-01, 2016 WL 2943519. For purpose of this opinion, it is sufficient to say that the FSLA provisions at issue do not apply to everyone within a school district.

ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 3

The parties disagree as to what was said before and during the November 2017 administrative meeting between Plaintiff, District Superintendent Dr. Swanson, and other District administrators who were outside Plaintiff's chain of command. ECF No. 33 at 14, ¶ 34. Plaintiff alleges that prior to the meeting Zachary Reese, a science teacher at OMS, raised the issue of non-payment for overtime with Plaintiff, who said she would raise the issue with Dr. Swanson. *Id.* at ¶ 35. Plaintiff also spoke with Human Resource Director Leanne Olson. ECF No. 33 at 14-15, ¶ 36. According to Plaintiff, Ms. Olson admitted she was aware of multiple employees who were being denied overtime pay and that she had discussed the issue with Dr. Swanson, but he did not take it very seriously. *Id.*

Plaintiff also met with Rachelle Gaines, payroll officer, and Scott Haeberle, Fiscal Administrator, prior to the November 2017 meeting to discuss classified staff who worked in excess of 40 hours per week while chaperoning District students on a college visit. ECF No. 33 at 15, ¶ 37. Mr. Haeberle informed Plaintiff that classified staff who work over 40 hours per week received comp time in lieu of overtime pay. *Id.*

Plaintiff spoke with an outside investigator hired by the District prior to the November 2017 meeting. ECF No. 33 at 17, ¶ 39. His investigative role and their discussion were unrelated to Plaintiff's overtime pay concerns, but Plaintiff raised the issue anyway. *Id.* Without any evidence to support her assertion, Plaintiff

assumed the investigator informed Dr. Swanson of Plaintiff's concerns, to which Plaintiff claims Dr. Swanson replied, "I really wish you hadn't done that." ECF No. 98 at 6.

At the November 2017 administrative meeting, Plaintiff testified that Dr. Swanson led a discussion informing the administrators of the District's failure to pay overtime to certain classified staff working in excess of 40 hours per week. ECF No. 33 at 16, ¶ 38. Plaintiff claims Dr. Swanson stated the District could not afford to pay overtime to the classified staff working dual jobs. *Id.* Plaintiff testified that she objected to the statements at the meeting in front of Dr. Swanson and other administrators. *Id.* Plaintiff claims she stated the District was violating the wage law, committing fraud, and that as a principal she had complete authority to sign off on timecards and extra duty contracts[3] and would not be party to illegal activity. *Id.*

Defendants contend the primary discussion during the November 2017 administrative meeting was what is referred to as the "Castle Rock decision"

---

[3]    Plaintiff's Statement of Material Facts references Plaintiff's authority to sign off on timecards and extra duty contracts. ECF No. 31 at 18, ¶ 80. However, this statement is not supported by Plaintiff's Declaration, which does not mention that authority. ECF No. 33 at 16, ¶ 38.

ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 5

related to the use of hourly employees when they engage in extracurricular

activities, such as coaching or advising.  ECF No. 29 at 10-11, ¶ 25.  Dr. Swanson

testified that between January 2016 and August 2020 there had not been any

instances of documented overtime for hourly District employees, nor had there

been any complaints or the need to investigate issues of non-payment of overtime.

*Id*.

Leanne Olson, the Human Resources Director for the District, was present

with administrators when Plaintiff brought up a concern with classified staff filling

the roles of coaches and advisors for the District.  *Id*. at 26, ¶ 69.  Ms. Olson

reported that the District could be put in jeopardy if classified staff worked more

than 40 hours per week, bringing up the Castle Rock decision and its findings.  *Id*.

The District agreed they wanted to continue filling the roles of coaches and

advisors with classified staff even if it meant paying overtime.  *Id*.  No one at the

meeting stated the District should not follow the Castle Rock decision.  Ms. Olson

did not recall Plaintiff saying anything at the meeting.  *Id*.  Ms. Olson had never

known Dr. Swanson to compensate employees less than the employee was entitled

to receive.  *Id*.

Assistant Superintendent Michael Porter was also present during the

November 2017 administrative meeting and recalled the discussion of the Castle

Rock decision as it pertained to classified staff who may need to be paid overtime

1    because of the number of hours they worked.  *Id*. at 33, ¶ 95.  He recalled Dr.

2    Swanson saying something to the effect of "We will pay—if it goes to overtime,

3    we will pay them."  *Id*. at ¶ 96.  Mr. Porter recalled Ms. Olson saying something to

4    the effect that the District needs to be careful when someone is applying for a

5    position that is beyond 40 hours because the District wants to make sure that

6    proper compensation is paid.  *Id*. at ¶ 97.  Mr. Porter testified that Dr. Swanson[4]

7    did not say the District could not afford to pay classified employees overtime

8    wages.  *Id*. at ¶ 99.

9         Omak High School Principal David Kirk was present at the November 2017

10   administrative meeting and did not recall Dr. Swanson saying anything to the

11   effect that the District could not afford to pay overtime to classified staff.  *Id*. at 37,

12   ¶ 115.  He further testified it would have been out of character for Dr. Swanson to

13   not properly compensate any employee of the District.  *Id*.

14        North Omak Elementary School principal John "Jack" Schneider was

15   present during the November 2017 meeting and recalled a discussion regarding the

16   

17   [4]    Defendants' Motion for Partial Summary Judgment indicates Plaintiff made

18   the statement.  ECF No. 97 at 5.  However, Defendants citation to their Statement

19   of Specific Facts alleges it was Dr. Swanson who made the statement.  ECF No. 29

20   at 33, ¶ 99.

ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT ~ 7

1   Castle Rock decision. *Id*. at 39, ¶ 123. Mr. Schneider did not recall Dr. Swanson

2   saying the District could not afford to pay overtime. *Id*. at ¶ 124.

3       Mr. Haeberle recalled an administrative meeting in which a general

4   discussion took place regarding whether employees were being properly

5   compensated for overtime. *Id*. at 41, ¶ 132. Mr. Haeberle testified there was no

6   concern that any of the District employees were not being properly compensated,

7   nor was he aware of any reported claims that the District failed to properly pay

8   overtime. *Id*. at ¶¶ 134-135.

9       Omak Middle School principal Ryan Christoph recalled an administrative

10  meeting in which the "Newcastle decision" (sic) was discussed, but testified the

11  conversation was just seeking background information. *Id*. at 43, ¶ 143.

12                          **DISCUSSION**

13  **I.    Summary Judgment Standard**

14      The Court may grant summary judgment in favor of a moving party who

15  demonstrates "that there is no genuine dispute as to any material fact and that the

16  movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling

17  on a motion for summary judgment, the court must only consider admissible

18  evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002). The

19  party moving for summary judgment bears the initial burden of showing the

20  absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S.

ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT ~ 8

317, 323 (1986).  The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law.  *Id.* at 248.  Further, a dispute is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party.  *Id.*  The Court views the facts, and all rational inferences therefrom, in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  Summary judgment will thus be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

## II.    Plaintiff's FLSA Claims

The Fair Labor Standards Act ("FLSA") prohibits retaliation by an employer against an employee "because such employee has filed any complaint . . . under or related to this chapter."  29 U.S.C. § 215(a)(3).  "To establish a prima facie case of retaliation, a plaintiff must show: (a) that the Defendants [were] aware of plaintiff's participation in a protected activity; (b) that an adverse employment

ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 9

1    action was taken against plaintiff; and, (c) that the protected activity was a

2    substantial motivating factor in the adverse employment action as to that plaintiff."

3    *Bowen v. M. Caratan, Inc.*, 142 F. Supp. 3d 1007, 1021 (E.D. Cal. 2015) (citing

4    *Lambert v. Ackerley*, 180 F.3d 997, 1007 (9th Cir. 1999)).  The FLSA is a remedial

5    statute and should be interpreted broadly.  *Kasten v. Saint-Gobain Performance*

6    *Plastics Corp*., 563 U.S. 1, 13 (2011).  Here, it is undisputed that Plaintiff did not

7    file a written complaint.  However, the Supreme Court in *Kasten* held that oral

8    complaints are sufficient to invoke the antiretaliation provision of the FLSA.  *Id*. at

9    17.  The FLSA also "seeks to establish an enforcement system that is fair to

10   employers."  *Id*. at 13.  Therefore, concerning oral complaints, employers "must

11   have fair notice that an employee is making a complaint that could subject the

12   employer to a later claim for retaliation."  *Id*.  The complaint must be "sufficiently

13   clear and detailed" such that a reasonable employer would be on notice that the

14   employee is asserting protected rights and calling for their protection.  *Id*. at 14.  In

15   other words, "a complaint is 'filed' when 'a reasonable, objective person would

16   have understood the employee' to have 'put the employer on notice that the

17   employee is asserting statutory rights under the Act.'"  *Id*.  (internal brackets

18   omitted).  Whether a complaint has been filed requires a case-by-case factual

19   analysis.  *Rosenfield v. GlobalTranz Enterprises, Inc.*, 811 F.3d 282, 286 (9th Cir.

20   2015) (citing *Lambert v. Ackerley*, 180 F.3d 997, 1008 (9th Cir. 1999)).

ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT ~ 10

Defendants move for summary judgment on Plaintiff's FLSA claims, arguing the claims fall under the "manager exception" to FLSA complaints. Prior to the Supreme Court's "fair notice" standard outlined in *Kasten*, several circuit courts adopted a "manager-specific legal standard" to help determine whether an employee had filed an FLSA complaint. *Rosenfield*, 811 F.3d at 287. The rule adopted in those circuits requires a manager employee to

> step outside his or her role of representing the company and either file (or threaten to file) an action adverse to the employer, actively assist other employees in asserting FLSA rights, or otherwise engage in activities that reasonably could be perceived as directed towards the assertion of rights protected by the FLSA.

*Id.* (collecting cases). While the parties in *Rosenfeld* assumed the "manager rule" differed from the "fair notice" rule, the Ninth Circuit observed "the two rules likely are consistent." *Id.* The Ninth Circuit held "we find it unnecessary to weigh in definitively on that question. Whether the manager rule is broader, narrower, or the same, the Supreme Court's opinion in *Kasten* controls and provides the legal rule of decision." *Id.* The Ninth Circuit further explained:

> The employee's job title and responsibilities—in particular, whether he or she is a manager—form an important part of that "context." Generally speaking, managers are in a different position vis-a-vis the employer than are other employees because (as relevant here) their employer expects them to voice work-related concerns and to suggest changes in policy to their superiors. That may be particularly true with

respect to upper-level managers who are responsible for ensuring
compliance with the FLSA.

If an entry-level employee reported that someone is underpaid in
violation of the FLSA and requested that the employee be
compensated in compliance with the Act, a reasonable employer
almost certainly would understand that report as a "complaint"
(depending, of course, on all the circumstances). But if the identical
report were made by a manager tasked with ensuring the company's
compliance with the FLSA, a reasonable employer almost certainly
would not understand that report as a "complaint" (again, depending
on all the circumstances). Rather, the employer naturally would
understand the manager's report as carrying out his or her duties. In
short, when determining whether an employee has "filed any
complaint," the employee's role as a manager often is an important
contextual element.

*Rosenfield*, 811 F.3d at 286.  The Ninth Circuit held that "an employee's

managerial position is an important contextual element that must be considered

when assessing whether the employee has filed a complaint[]" and that "to focus

on only one specific factual element may obscure important nuances."  *Id*. at 287-

88.

To illustrate, the plaintiff employee in *Rosenfield* served as either the

Manager of Human Resources or Director of Human Resources during her

employment with the defendant.  *Id*. at 288.  The plaintiff was *not* responsible for

FLSA compliance; compliance issues fell within the purview of her boss's

responsibilities.  *Id*.  When the plaintiff raised concerns about FLSA violations to

ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT ~ 12

her boss, he "did not understand, appreciate, or welcome [plaintiff's] bringing to his attention the FLSA violations." *Id*. (quotation omitted).

The plaintiff then went on to complain orally on at least eight occasions to management; provided specific assertions and copies of the statute to management; and raised the FLSA violations in at least 27 weekly and monthly reports to her supervisors. *Id*. The Ninth Circuit found that, despite the plaintiff's managerial position, "a reasonable jury could find that [her] advocacy reached the requisite degree of formality to constitute protected activity." *Id*.

Here, construing the evidence in the light most favorable to Plaintiff, a jury could not reasonably conclude that Plaintiff provided fair notice of her FLSA claims to her employer.

First, Plaintiff contends she complained to an outside investigator about the overtime issue, along with other issues. It is undisputed that the outside investigator was not charged with investigating the overtime issue, but something completely different. Conversations with a third party do not equate to "fil[ing] any complaint" with the employer. This conversation did not reasonably "put the employer on notice that the employee is asserting statutory rights under the Act."

Second, Plaintiff speculates that the outside investigator told Dr. Swanson. This speculation is not supported with admissible evidence and therefore does not constitute a complaint filed with the employer. Nor does this speculation

ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 13

reasonably put the employer on notice with a "clear and detailed" complaint asserting protected rights and calling for their protection.

Third, Plaintiff recounts a conversation she had with Mr. Reese, a science teacher at OMS. These conversations do not constitute "fil[ing] any complaint" with her employer.

Fourth, Plaintiff recounts a conversation with Ms. Olson, the Director of Human Resources. ECF No. 33 at ¶ 36. Significantly, Plaintiff claims this to be a conversation where she learned certain information, but she does not contend that she filed a complaint. This conversation does not constitute a complaint filed with the employer which would put the employer on notice of a clear and detailed assertion of protected rights.

Fifth, Plaintiff recounts a conversation she had with Ms. Gaines, the payroll officer and Mr. Haeberle, the Fiscal Administrator for the District. ECF No. 33 at ¶ 37. After gathering information from them, Plaintiff said she objected to the 1:1 ratio for awarding comp time, explaining that she told Mr. Haeberle "that is not what I have told the classified staff and I did not believe that was correct under the law. I told them they would get paid overtime." *Id*. Again, Plaintiff does not contend that this was her complaint filed with her employer which provided a clear and detailed assertion of protected rights. Nor does this constitute such.

ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 14

Sixth, Plaintiff recounts her version of the November 2017 administrative team meeting.  ECF No. 33 at ¶ 38.  Significantly, Dr. Swanson led the discussion and brought up the overtime issue.  While the parties and all those in attendance dispute what was said during the meeting, construing the evidence in the light most favorable to Plaintiff, no "reasonable, objective person would have understood the [Plaintiff]" to have "put the employer on notice that the [Plaintiff] [was] asserting statutory rights under the Act."  It is undisputed that the Plaintiff's statements were made at work while she was attending the "administrative team meeting" which was part of her job duties.  While others attending may not have been within her direct chain of command, it is undisputed that all attending were fellow employees of the District and attended as part of their jobs, as well.  In support of her argument, Plaintiff submits evidence that it was not within her job duties to enforce the FLSA, but she also submits statements that the issue came to her attention as the principal and she told classified staff her interpretation of the law.  It is clear the administrative team meeting, led by Dr. Swanson, was to discuss management issues.  The evidence does not support her claim that the management meeting put her employer on notice that she was filing a verbal complaint, sufficiently clear and detailed such that "a reasonable, objective person would have understood the employee" to have "put the employer on notice that the employee is asserting statutory rights under the Act."  *Kasten*, 563 U.S. at 14 (internal brackets omitted).

ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 15

Plaintiff's statements did not reach "the requisite degree of formality to constitute protected activity" under the FSLA. *Rosenfeld*, 811 F.3d at 288.

On this record and construing the evidence in the light most favorable to Plaintiff, considering all the circumstances and in context, no jury could reasonably conclude that Plaintiff's verbalization of the FSLA issue at the November 2017 administrative team meeting was a complaint filed with her employer.

Defendants are entitled to summary judgment on this issue.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

Defendants' Motion for Partial Summary Judgment (ECF No. 97) is **GRANTED**. Plaintiff's FSLA retaliation claim is dismissed.

The District Court Executive is directed to enter this Order and furnish copies to counsel.

**DATED** October 5, 2020.



THOMAS O. RICE
United States District Judge